### DAVIDGE v. GUARDIAN TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, Third Department. December 30, 1909.)

1. CORPORATIONS (§ 422*)—LIABILITIES—FALSE REPRESENTATIONS BY OFFICER.

   Where a trust mortgage securing bonds referring to it for the nature of the security is in the custody of a corporation trustee, it, though not interested in their sale by another, is under implied obligation to disclose the nature of the lien to an intending purchaser, especially where the latter can only learn from the trustee itself whether it has in pursuance of its duty satisfied prior liens, and, if the trustee's vice president misrepresents the nature of the lien, his act is within the scope of his agency and binds the trustee.

   [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 422.*]

2. PARTIES (§ 7*)—TRUSTEE OF EXPRESS TRUST—RIGHT TO SUE.

   A partner in whose name bonds purchased with partnership funds are registered is a trustee of an express trust as to his copartner's interest, and as such is authorized by Code Civ. Proc. § 449, to sue for false representations inducing the purchase.

   [Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 9–11; Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. FRAUD (§ 59*)—ACTIONS—MEASURE OF DAMAGES.

Where a purchase of bonds secured by a mortgage on property worth less than their face value is induced by false representation that the mortgage is a first lien, and the lien is subsequently divested by a sale under prior liens, the measure of damages is the value of the property, and not the amount paid for the bonds.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 59.*]

Appeal from Trial Term, Brome County.

Action by S. Richard Davidge against the Guardian Trust Company of New York. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Modified and affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Hotchkiss & Barber (Harvey D. Hinman, of counsel), for appellant.

S. Mack Smith, for respondent.

SMITH, P. J. The action is brought to recover damages caused by the false representation of one of the officers of defendant company, which induced the purchase by the plaintiff of 10 certain bonds of the Metropolitan Real Estate Improvement Company. The representation claimed to have been falsely and fraudulently made was that the mortgage executed to secure said bonds was a first mortgage upon the property upon which it was a lien. The face value of the bonds was $5,000. The verdict of the jury was $4,500. By stipulation that was afterwards reduced to $4,265.40, being the amount actually paid for said bonds with interest.

On November 24, 1905, the Metropolitan Real Estate Improvement Company executed and delivered to this defendant a trust mortgage covering a large tract of land in the city of Yonkers, to secure the payment of a series of bonds to be issued by said improvement company. The total issue contemplated was 2,000 bonds, of the par value of $500 each. The mortgage itself recited the existence of prior liens upon the premises covered thereby to the extent of $263,400, and contained this provision:

"Whereas, there are now existing mortgages which are liens upon the property or a portion thereof hereinbefore described and upon which this mortgage is given and intended to become a lien before the maturity of the said existing mortgages, which said mortgages are as follows: A mortgage held by the Metropolitan Life Insurance Company for $120,000. A mortgage held by the Valley Farms' Company for $55,000. A mortgage held by the Valley Farms' Company for $8,400. Two mortgages held by the Connecticut Building & Loan Association for $30,000 and $50,000, respectively, all of which mortgages amount in the aggregate to the sum of $263,400. Whereas, it is desired and intended to pay off the said mortgages and each of them out of the proceeds of the sale of the bonds herein described: Now therefore it is hereby agreed by the said company that during the third year of the life of this trust mortgage it will pay to the Guardian Trust Company as trustee the sum of $60,000, and during the fourth year of the life of this mortgage the sum of $100,000 and such further sum or sums as may be necessary to pay the principal and interest due on the said mortgage and to procure the discharge and satisfaction thereof, and the said Guardian Trust Company as trustee hereby agrees to apply such payments when so made to the payment

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and satisfaction of the said mortgages, that it will make such application of such payments pro rata unless the order of such application shall be differently directed by said company, in which case it will make such application of such payments as directed by such company."

Each of the bonds contained the following statement:

"This bond is one of a series of two thousand bonds of the denomination of five hundred dollars ($500) each, numbered consecutively from one to two thousand, inclusive, amounting in the aggregate to one million dollars, all of which are equally secured by an indenture of mortgage bearing date the 24th day of November, A. D. 1905, whereby certain property now owned by this company has been mortgaged to the Guardian Trust Company of New York City as trustee, and pledged for the benefit of the holders of the said bonds. For a statement of the property pledged, the nature of the security, the rights of the holders of the said bonds, and conditions upon which bonds are secured and issued, reference is hereby made to said indenture of mortgage."

The trustee's certificate was also in the form usually employed, and was as follows:

"Trustee's Certificate. The Guardian Trust Company, as trustee, hereby certifies that the within bond is one of the series of bonds described in the trust deed or mortgage therein described. Guardian Trust Co., New York, Trustee. L. C. Haynes, Secretary."

The property was thereafter sold under the prior mortgages, thereby entirely divesting the property of the lien of this mortgage. Upon such sale there was no surplus to which the lien of this mortgage could attach.

Prior to the purchase of these bonds, the plaintiff, together with one Russell, who was selling the same either for himself or the Metropolitan Real Estate Improvement Company, went to the defendant's offices in New York City, and in response to an inquiry by plaintiff was there informed by Charles L. Robinson, the defendant's vice president, that the mortgage securing said bonds was a first lien upon the property covered thereby. Robinson was the officer who executed the mortgage on defendant's behalf, and his name appears upon the bond as having signed the name of defendant to a notice of registration thereof. Upon the trial the defendant offered no evidence, but rested after the plaintiff had finished his case. The jury has found that the representations were made as sworn to by the plaintiff, that they were fraudulently made, and has assessed the plaintiff's damages.

The defendant's main contention is that the representation by its vice president, Robinson, was not the representation of the defendant; that it was not made within the scope of his duties as its officer. It is true that this defendant was not selling these bonds and was not interested in their sale. Such representations, therefore, could not be deemed the representations of the defendant because of an implied authority to make representations to procure a sale. But the defendant had accepted the trust created by the mortgage. The bonds issued and certified by the defendant referred to the mortgage for ascertainment as to the nature and extent of the security. That mortgage was delivered to the defendant, was in its custody and control. The defendant, therefore, was under the implied obligation to disclose the full contents of that mortgage, both to any bondholder and to any intending purchaser of said bonds. If instead of showing the mortgage,

and thereby disclosing the nature and extent of the security which was held for these bonds, the defendant's officer chose to state the contents of that mortgage and the nature and extent of the lien which it created, it was his duty to speak honestly. If in so disclosing its contents he fraudulently misrepresented the nature of the lien, his act was without doubt an act within the scope of the officer's agency, and the declarations so made must be deemed the declarations of the defendant. This duty is further emphasized by the nature of the trust which the defendant assumed. These bonds were installment bonds, payable $50 a year for 10 years. Under the terms of the mortgage above quoted, during the third year of the life of the mortgage the trustee was to apply $60,000 to the payment of these prior mortgages. and during the fourth year of the life of the mortgage the trustee was to apply $100,000, "and such further sum or sums as may be necessary to pay the principal and interest due on said mortgages" and to procure a discharge and satisfaction thereof. These bonds were being sold as paid-up bonds, with the payment of all future installments anticipated. The trustee was not authorized to receive the full consideration of the bonds with installments anticipated, and wait three years before making payment upon the prior mortgages. The fair intent of the obligations is that, after three years' installments had been paid, the trustee must commence to reduce the prior incumbrances and pay $60,000 thereupon, and after four installments had been paid the trustee should pay such further sum as was necessary to satisfy the mortgage. When sufficient number of those bonds had been sold as paid-up bonds, it became the duty of the defendant without waiting three years apply at least part of the proceeds of the bonds to the payment of those prior mortgages. Whether a sufficient number of bonds had been sold so as to impose this duty upon the defendant, and whether the defendant had, in pursuance of its duty, satisfied any part or all of the prior mortgages, could only have been ascertained from the defendant itself. By reason of this necessity of inquiry of the defendant, there arose a correlative obligation on the part of the defendant to disclose fully the exact nature and situation of the security.

Other objections are made to this judgment. It seems that the bonds were purchased with moneys belonging jointly to Davidge and his partner, Smith. The answer was amended upon the trial, without objection, to allege a defect of parties plaintiff in the failure to join the partner, Smith, with the plaintiff. But the bonds were registered in the name of Davidge. He thereby became as to Smith's interest a trustee of an express trust, and as such was authorized to bring this action. Code Civ. Proc. § 449.

Another and more serious objection made by the defendant is as to the rule of damages held by the trial court. Of these 2,000 bonds, 1,016 only were issued. The property is shown by the plaintiff's witnesses to have been worth $219,000. The representation was that this was a first mortgage. These 1,016 bonds were of the face value of $508,000. If the property had been as represented, without prior lien, the plaintiff's bonds would have been worth 5/508 of $219,000, or $2,-155.51. This sum, with interest, is the amount in which the plaintiff

has been. damaged by the false representation of the defendant. The judgment should be so modified, and, as modified, affirmed, without costs to either party.

Judgment modified as per opinion, and, as modified, affirmed, without costs to either party. All concur.

## NOTE.

[a] (Ala. 1901) It is not within the general scope of the authority of an agent of a corporation to alter, vary, or enlarge a contract made by a corporation under its corporate seal; and therefore an act done or an omission made by the agent of a corporation, who had entered into a contract under its corporate seal, having reference to said contract, cannot work an estoppel against the rights of said corporation arising under such contract, unless it is shown that said act or admission by said agent in reference to the contract was duly authorized by the corporation.—Sullivan v. Louisville & N. R. Co., 30 So. 528, 128 Ala. 77.

[b] (Colo. 1901) Where plaintiff's depot master requested the electric lighting company which furnished the current for lighting the building to send a man to repair a broken chandelier, and the man sent examined the break, and, on inquiry from the depot master, assured him that there was no danger, but it did not appear that he was other than a workman sent to repair, or that he was competent or authorized to advise, or that the depot master had any right to make the inquiries or rely on the answer, the evidence did not show that the electric lighting company was responsible for the man's statement.—National Fire Ins. Co. v. Denver Consol. Electric Co., 63 P. 949, 16 Colo. App. 86.

[c] (Conn. 1903) A company is not bound by the representations of its agent as to its stock; he at the time being engaged, to the knowledge of the person with whom he was dealing, in selling stock owned by himself, and the other party relying on his statements because he thought one who was an agent of the company ought to have accurate information.—Western Realty & Investment Co. v. Haase, 53 A. 861, 75 Conn. 436.

[d] (Ga. 1898) If the holder of an incumbrance on real estate be a corporation, and information as to the amount of the debt due be furnished by an officer, who at the time of giving the information is acting within the sphere of his appropriate duties to a prospective purchaser of the property, the corporation will be estopped, as against the person acting on such information, from claiming any larger amount than the sum fixed by the officer in his statement.—Fulton Building & Loan Ass'n v. Greenlea, 29 S. E. 932, 103 Ga. 376.

[e] (Ill. 1904) When an officer of a corporation, while acting within the scope of his authority, makes an admission, the corporation is bound thereby.—Vincent v. Soper Lumber Co., 113 Ill. App. 463.

[f] (Ind. 1903) Oral or printed statements made by agents or officers of a building and loan association in contradiction of the by-laws, which are by reference made a part of the contract with a borrowing member, or in contradiction of the language of the contract itself, whether relied on by the borrowing member or not, do not constitute the basis of an estoppel unless the representations are fraudulent.—Noah v. German-American Bldg. Ass'n, 68 N. E. 615, 31 Ind. App. 504.

[g] (Iowa, 1901) The fact that a person in charge of corporate property is an agent of the corporation, and authorized to sell the same, does not render the stockholders liable for his false representations as to the amount of the property, by which a third person. is induced to buy their stock, but he must be shown to be the agent of the stockholders, or to have been referred to by them as possessing knowledge of the property.—Boddy v. Henry, 85 N. W. 771, 113 Iowa, 462, 53 L. R. A. 769.

[h] (Mich.) A corporation was bound by representations as to its solvency, made for the purpose of floating its paper by a member of a firm, that was both payee and indorser and owned nearly all the stock and controlled the corporate operations.—(1883) Genesee Savings Bank v. Barge Co., 17 N. W. 790, 52 Mich.

164; (1884) Genesee County Savings Bank v. Michigan Barge Co., 18 N. W. 206, 52 Mich. 438.

[i] (N. C. 1904)   Where two corporations, pursuant to resolutions of their stockholders, made a contract whereby one was to convey all its property to the other, and at a meeting of all the stockholders of both corporations the spokesman for the grantee corporation stated that the grantee did not care for certain lots belonging to the grantor, his remarks could not have the effect of surrendering the rights of the grantee in such lots under the contract.— Pinchback v. Bessemer Min. & Mfg. Co., 49 S. E. 106, 137 N. C. 171.

[j] (Tex. 1904)   Representations made by an officer or agent of a corporation will not create a liability against the corporation, unless the representation be made by the agent concerning a business which the corporation is empowered by its charter to do, and unless the agent is at the time acting within the scope of his authority.   Judgment (Civ. App. 1903) 77 S. W. 239, reversed.— Commercial Nat. Bank v. First Nat. Bank, 80 S. W. 601, 97 Tex. 536, 104 Am. St. Rep. 879.

[k] (Tex. 1904)   Where the claim agent for a railroad company had authority to represent it in procuring a release of liability from one who had been injured while a passenger, and a physician employed by the company conspired with the claim agent to procure a release for an inadequate sum, representations made by the physician were binding on the carrier on the issue as to fraud in the procurement of the release.—International & G. N. R. Co. v. Shuford, 81 S. W. 1189, 36 Tex. Civ. App. 251.

[l] (Va. 1898)   A false statement made by the agent of a corporation as an inducement to one to subscribe for stock therein, that the corporation had procured and contracted for the building of a woolen mill and iron foundry on its property, will afford a ground for damages against the corporation.—Owens v. Boyd Land & Improvement Co., 28 S. E. 950, 95 Va. 560.

[m] (Va. 1904)   The admissions and representations made by an agent of a corporation, acting within the scope of his authority, and concerning matters intrusted to him, are binding upon the corporation.—White Hall Co. v. Hall, 46 S. E. 290, 102 Va. 284.

[n] (W. Va. 1899)   The false statement of an agent of a corporation appointed to buy timber for it, in making the contract, that the company is a partnership, does not bind its members or the corporation to liability as partners.—McDonald v. Cole, 32 S. E. 1033, 46 W. Va. 186.