PATTERSON et al. v. GUARDIAN TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, Third Department.  May 3, 1911.)

1. CORPORATIONS (§ 479\*)—TRUST MORTGAGES—CONSTRUCTION.

A trust mortgage executed by a corporation to secure its bonds of $500 each, to be sold and paid for in 10 equal annual installments, which provides that, during the third and fourth years of the life of the mortgage, specific amounts shall be paid by the corporation to the trustee, who shall apply the same to the payment of prior mortgages, requires the trustee to commence to reduce the prior incumbrances after three years installments have been paid, and to continue to do so after four installments have been paid, and the corporation may not collect and receive more

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

than $200 on each bond without providing for the payment of the prior mortgages.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 479.*]

2. CONTRACTS (§ 168*)—IMPLIED COVENANTS—LIABILITY.

Though a party does not in express terms undertake to do a particular act, a covenant to do it will be implied where, from the text of the contract or the surrounding circumstances, it is manifest that the parties so intended, and an action of covenant lies for nonperformance of the act.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 751; Dec. Dig. § 168.*]

3. CORPORATIONS (§ 479*)—TRUST MORTGAGES—LIABILITY OF TRUSTEE.

A trust mortgage executed by a corporation to secure 2,000 bonds of $500 each, to be paid for in 10 equal installments, recited that it was intended to pay off prior mortgages out of the proceeds of the sale of the bonds, and provided that during the third and fourth years of the life of the mortgage amounts sufficient to discharge the prior mortgages should be paid by the corporation to the trustee, who should apply the same to the prior mortgages, and declared that the bonds should be authenticated by a certificate of the trustee. More than 800 bonds were issued and sold with the knowledge and consent of the trustee as paid-up bonds, and the trustee permitted the corporation to withdraw the proceeds without applying the same to the payment of the prior mortgages. *Held*, that the trustee undertook to discharge the duty of protecting the bondholders and was liable on an implied covenant to exercise ordinary intelligence to protect the proceeds of the bonds and to see that they were applied to the payment of the prior mortgages, and bondholders could sue the trustee for breach of covenant.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1872; Dec. Dig. § 479.*]

Houghton, J., dissenting.

Appeal from Special Term, Broome County.

Action by Edward J. Patterson and others, suing on their own behalf and on behalf of other bondholders under a trust mortgage given by the Metropolitan Real Estate Improvement Company, against the Guardian Trust Company of New York, mortgage trustee. From an interlocutory judgment of the Special Term (67 Misc. Rep. 614, 122 N. Y. Supp. 773), sustaining a demurrer to the complaint, plaintiffs appeal. Reversed, and demurrer overruled, with leave to answer.

Argued before SMITH, P. J., and KELLOGG, SEWELL, and HOUGHTON, JJ.

S. Mack Smith, for appellants.
Henry D. Hotchkiss, for respondent.

SEWELL, J. The defendant interposed a demurrer to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. The complaint alleges, among other things, that the Metropolitan Real Estate Improvement Company is a foreign corporation, and that the defendant is a domestic corporation, having power under its charter to act as trustee under a mortgage; that on the 24th day of November, 1905, the Metropolitan Real Estate Improvement Company executed and delivered to the defendant, the trustee therein, a mortgage upon a tract of land in the city of Yonk-

ers to secure the payment of 2,000 bonds, of $500 each, to be issued by the improvement company, and to be paid for in 10 equal annual installments, and that at the time of the execution of the mortgage the property was incumbered by existing mortgages, to the amount of $263,400.

The mortgage as pleaded provides that:

"Whereas it is desired and intended to pay off the said mortgages, and each of them, out of the proceeds of the sale of the bonds herein described, now, therefore, it is hereby agreed by the said company, that during the third year of the life of this trust mortgage it will pay to the Guardian Trust Company as trustee, the sum of $60,000, and during the fourth year of the life of this mortgage, the sum of $100,000 and such further sum or sums as may be necessary to pay the principal and interest due on said mortgages, and to procure the discharge and satisfaction thereof, and the said Guardian Trust Company as trustee hereby agrees to apply such payments when so made to the payment and satisfaction of the said mortgages."

The mortgage also provides that the bonds secured by the mortgage shall be signed by the president of the company and have the corporate seal affixed and attested by the secretary, and that none of the bonds shall be issued or be of any binding force until the same are authenticated by a certificate of the trustee "that the within bond is one of the series of bonds described in the trust deed or mortgage therein described." It further provides that the bonds shall be delivered by the trustee, only to the treasurer of the company, and then "upon the written order of the company, signed by its president"; that none of them shall be valid until the first annual installment of $50 has been paid to the improvement company; and that all payments "are due at the Metropolitan Real Estate Improvement Company's office, in the city of New York"; and that, upon the payment of each installment, the holder is entitled to a receipt signed by the president, vice president, or treasurer of the improvement company, which must be attached to the bond and shall be conclusive evidence of such payment and the amount thereof.

The complaint also alleges that, of the 2,000 bonds secured by the mortgage, more than 800 were issued and sold with the knowledge and consent of the defendant, as paid-up bonds; that they were certified as paid-up bonds by the defendant as trustee; that there was paid therefor the sum of $400,000; that the defendant was the depositary of the moneys received from the sale of the bonds, and suffered the said Metropolitan Real Estate Improvement Company to withdraw and misapply the moneys "without applying the same to the payment of the said underlying indebtedness."

It further alleges that no part of the principal of the underlying mortgages was paid the defendant except one held by Randolph Lowerre to secure the sum of $8,400; that in the year 1908 two of the mortgages, on which there was then due the sum of $80,000, were foreclosed, and the real property described in the trust mortgage was sold for less than the amount due upon the underlying indebtedness, and the defendant as trustee was divested of all right therein; that the Metropolitan Real Estate Improvement Company is insolvent; that the plaintiffs are the owners and holders of three of the bonds

certified by the defendant as paid-up bonds; and that this action is brought on behalf of all the defendants who may desire to come in and contribute to the expense thereof.

It is also alleged that by and under the terms of the trust mortgage it became and was the duty of the defendant as trustee, and as the representative of the plaintiffs, to compel the application of the moneys received from said paid-up bonds to the payment of the underlying indebtedness, and that it violated its covenants and agreements by failing to apply the moneys received from the sale of the bonds to the payment of the underlying indebtedness, as provided in the mortgage, and in knowingly suffering and permitting the company to misapply the proceeds and appropriate the moneys without applying the same to the payment of the underlying indebtedness.

In Davidge v. Guardian Trust Company, 136 App. Div. 78, 120 N. Y. Supp. 628, this court, in construing the mortgage now before us, held that the fair intent of the provision for the payment of the prior mortgages was:

"That, after three years installments had been paid, the trustee must commence to reduce the prior incumbrances and pay $60,000 thereupon, and after four installments had been paid the trustee should pay such further sum as was necessary to satisfy the mortgage."

[1] We still are of the opinion that the use of the words "third year" and "fourth year" in this provision is only important as indicating from which installments the prior mortgages were to be paid and as showing that, according to the scheme of the mortgage, the improvement company could not collect, and was not entitled to receive, more than $200 on each bond without providing for the payment of the prior mortgages.

The charge in the complaint is that the defendant rested under the implied covenant, as well as the legal duty, to apply the proceeds of the bonds, deposited with it, to the payment of the prior mortgages, or, if it had no right to make such appropriation without the authority or consent of the company, to withhold the proceeds and prevent their use or disposition for any other purpose.

[2] It has been repeatedly held that, although a party does not in express terms undertake to do a particular act, a covenant to do it will be implied and read into an instrument, if from the text of the agreement or the surrounding circumstances it is manifest that the parties so intended, and that for a nonperformance of the act an action of covenant will lie. Booth v. Cleveland Mill Co., 74 N. Y. 15; Horgan v. Mayor, 160 N. Y. 516, 55 N. E. 204. It seems to us clear, from the inference naturally derivable from the provisions of the mortgage, the disclosed purposes of the parties in making the mortgage, and the result they sought to accomplish, that it was not intended that the defendant should be a mere dummy, or that it should be charged with no duty, in respect to the preservation or protection of the proceeds of the bonds, until they were actually paid to it by the company to be applied upon the prior mortgages.

[3] In accepting the trust and becoming a mortgagee in trust for the benefit of the bondholders, the defendant undoubtedly undertook

to discharge the duty and exercise the care and diligence which would naturally be expected of an intelligent person acting in like circumstances to protect his own mortgage. King v. Talbot, 40 N. Y. 76. It is conceded that this was not done. The scheme of the mortgage was departed from, and 800 of the 2,000 bonds were issued and sold as paid-up bonds, and were certified as paid-up bonds by the defendant. The sum of $400,000, paid therefor, was deposited with the defendant and was in its possession and under its control. It had complete knowledge of the provisions of the mortgage which required the prior liens to be fully paid before the fifth installment became due. It knew that the payment of the prior liens was one of the purposes for which the mortgage was made and the bonds were issued. It knew, or was chargeable with knowing, not only that it was vested with certain legal rights against the improvement company, but that it had a lien or equity in the nature of a trust which gave it the right to retain possession of enough of the proceeds to pay the prior mortgage, and to subject it to that purpose, if it did not have the power to make the appropriation. It would seem too clear for argument that the plainest principles of justice require the implication of a covenant imposing upon the defendant the obligation to exercise ordinary vigilance and intelligence in protecting the proceeds of the bonds, and to see that they are applied to the payment of the prior mortgages. If we are right in this conclusion, it is evident that the complaint states a cause of action for the breach of the covenant.

We therefore are of the opinion that the interlocutory judgment should be reversed, with costs, and the demurrer overruled, with costs, but with leave to the defendant to withdraw the demurrer and answer upon payment of the costs of the appeal and of the demurrer. All concur, except HOUGHTON, J., who dissents in opinion.

HOUGHTON, J. (dissenting). I think the complaint does not state facts sufficient to constitute a cause of action against the defendant, and that the interlocutory judgment sustaining the defendant's demurrer should be affirmed.

I do not understand the decision of this court in Davidge v. Guardian Trust Company, 136 App. Div. 78, 120 N. Y. Supp. 628, to be controlling upon the question presented upon this appeal. The only question decided in that case was whether or not an officer of the defendant falsely represented to the damage of a bondholder that the mortgage in question was a first lien when in fact it was not. In the course of the opinion it was stated that it was the duty of the defendant, as trustee under the mortgage, when three or more installments on the bonds had been paid, to begin to apply the subsequent installments to the liquidation of the first mortgages upon the property. This statement was by way of argument and obiter so far as the precise question presented for decision was involved, and therefore it seems to me should not be regarded as controlling our decision in the present case.

Treating the obligation of the defendant as trustee under the mortgage as an open question, I do not think the defendant was under

the express or implied obligation to liquidate and satisfy any of the prior mortgages upon the real property except as the money was paid to it by the Metropolitan Real Estate Improvement Company for that particular purpose. There is no allegation in the complaint that moneys were paid by the real estate company to the defendant for such purpose. The burden of the complaint is that the defendant knew, actually or in law, that the real estate company was selling bonds upon which the 10 full installments had been paid without paying over to the defendant any of the money so received for the purpose of liquidating and satisfying the first mortgages upon the property, and that, in some way not pointed out, it was the duty of the defendant to stop such procedure.

The mortgage is made a part of the complaint, and, although there is an allegation that it was the duty of the defendant to see to it that moneys were applied for the satisfaction of the prior mortgages, this allegation is controlled and limited by the provisions of the mortgage itself. Looking to the mortgage to ascertain the duties of the defendant, we find in the recitals that it is the intention of the real estate company in giving the mortgage to the defendant to issue bonds payable in 10 annual installments. There is nothing in the instrument, however, prohibiting a purchaser from paying all the installments at one time. All moneys paid for bonds were to be paid to the real estate company at its place of business. The only prescribed duty of the defendant with respect to the bonds is to certify that each was one of a series of bonds described in the trust deed. After certifying it was compelled to deliver the bonds, not to the purchaser, but only to the treasurer of the real estate company upon an order signed by the president and attested by its secretary with its corporate seal. The defendant as trustee, therefore, had no control over the sale of the bonds or the receipt of any proceeds from such sale, and the allegation of the complaint that such proceeds were deposited with the defendant, and the claim that it should have withheld from such deposit made with it, not as trustee, but as banker, sufficient to pay the prior mortgages upon the real property, seems to me wholly untenable in view of the particular provision of the mortgage, made a part of the complaint, and by which we must be guided with respect to the defendant's duty as trustee in regard to paying the existing mortgages upon the property. Such provision reads as follows:

"Twenty. Whereas, there are now existing mortgages which are a lien upon the property or a portion thereof hereinbefore described and upon which this mortgage is given and intended to become a lien before maturity of said existing mortgages, which said mortgages are as follows: [Describing them.] Whereas, it is desired and intended to pay off the said mortgages and each of them out of the proceeds of the sale of the bonds herein described, now therefore it is hereby agreed by the said company (real estate company) that during the third year of the life of this trust mortgage it will pay to the Guardian Trust Company as trustee the sum of $60,000, and during the fourth year of the life of this mortgage the sum of $100,000 and such further sum or sums as may be necessary to pay the principal and interest due on said

mortgage and to procure the discharge and satisfaction thereof, and the said Guardian Trust Company as trustee hereby *agrees to apply such payments when so made* to the payment and satisfaction of the said mortgages. That it will make such application of such payments pro rata unless the order of such application shall be differently directed by said company (real estate company) in which case it will make such application of such payments as directed by such company."

There is no allegation or claim that any part of the $60,000 or of the $100,000 above mentioned was ever paid to the defendant for the purpose of liquidating the first mortgages upon the property. If such moneys had been paid to it, and it had failed to apply them, of course it would be liable. The ground of complaint is that the defendant trustee having on deposit moneys belonging to the real estate company as banker, knowing or having reason to know that more than a three-tenths payment on the bonds had been paid, and that in fact all installments had been paid, did not in some way throttle the real estate company and compel it to pay over to the defendant as trustee the $60,000 and the $100,000 for the purpose of satisfying the prior mortgages. The duty of the defendant, as specifically stated, certainly required it only to pay over moneys in satisfaction of the prior mortgages when such moneys were paid to it for that purpose. This duty is so explicitly stated that to my mind there is no room for implying any further duty. By the trust mortgage the defendant did not agree to watch out for bondholders and see that the real estate company did its duty toward the purchasers of its bonds by liquidating and satisfying the prior liens upon the property. The obligation which it assumed was the ordinary one of trustee of a trust mortgage. It had no control over the proceeds derived from sale of the bonds. The fact that such proceeds were deposited with it as banker gave the defendant no right to confiscate such proceeds for the purpose of paying prior mortgages. It had no more right to do that than it would have had if the money had been deposited in any other bank. It could only pay the first mortgages when the money was paid by the real estate company to it for that purpose, and, having no right to make any such payment from general funds on deposit, it violated no duty by not doing so.

In addition, if it ever was the duty of the defendant to confiscate any money it could get hold of for the purpose of satisfying the prior mortgages, still the time never arrived when it became its duty so to do. Clearly no such duty arose until some time during the third year of the life of the trust mortgage. The term "third year," as used in the mortgage, cannot mean "third installment." The mortgage was executed the 24th day of November, 1905. If the defendant was under any obligation to see to it that the first mortgages were satisfied, it manifestly had the whole of the year beginning November 24, 1908. The complaint alleges that the bonds in controversy were sold in 1906 and 1907, and that the real estate company was insolvent ever since the year 1907, and that in or about the year 1908 the prior mortgages were foreclosed and the property sold

for less than the amount of the prior mortgages, thereby wholly cutting off the trust mortgage. The date of such sale in 1908 is not stated; but it is fair to assume from the other allegations of the complaint that it was prior to the 24th of November, and in any event the defendant had more than 10 months of the year beginning November 24, 1908, in which to perform its obligation of paying off the prior mortgages, if any such obligation existed. The allegations of the complaint show that it was powerless to do this because the real estate company was insolvent the year previous, and therefore could not have had on deposit any money which the defendant could appropriate for the paying of such prior mortgages.

For these reasons, I think the interlocutory judgment was right and should be affirmed.