## KELLY v. ILLINOIS STATE TRUST CO.

(Circuit Court of Appeals, Seventh Circuit.  April 14, 1914.)

No. 2055.

1. DEPOSITARIES (§ 2*)—STOCKS AND BONDS—DISTRIBUTION—SYNDICATE AGREEMENT.

Where a trust company, with which stocks and bonds to be issued by a railroad company were to be deposited, was not mentioned in the recitals of a syndicate agreement as a party thereto and did not execute the document, but the agreement was executed by certain persons named as syndicate managers as parties of the first part and by subscribers as parties of the second part, and only as to the original stock was the trust company referred to as a trustee, and then as trustee for persons named as voting trustees, and not for the subscribers or syndicate managers, the trust company was a mere depositary, and in no sense accountable to the subscribers as a trustee.

[Ed. Note.—For other cases, see Depositaries, Dec. Dig. § 2.*]

2. DEPOSITARIES (§ 11*)—TRUST COMPANY—DEPOSITARY OF SECURITIES—RIGHTS OF OWNER—REMEDIES.

Where a syndicate agreement provided for the deposit of certain railroad bonds and interim stock certificates with a trust company, which was a mere agent of the syndicate managers, to be distributed among the subscribers unless sold or exchanged by the managers of the syndicate before July 1, 1908, the remedy of a subscriber for the alleged wrongful act of the trust company in refusing to make distribution after the date specified and in permitting the syndicate managers thereafter to exchange the securities for other stocks and bonds and to cancel the original securities would ordinarily be an action at law and not a suit in equity.

[Ed. Note.—For other cases, see Depositaries, Cent. Dig. §§ 14–19; Dec. Dig. § 11.*]

3. DEPOSITARIES (§ 11*)—DEPOSIT OF SECURITIES—SYNDICATE AGREEMENT—ENFORCEMENT—EQUITABLE RELIEF.

Where syndicate managers were authorized to exchange certain railroad bonds and interim stock certificates of a railroad company for other securities deposited for the benefit of subscribers with a trust company, and such exchange was duly made, but, on suit being brought in equity by a subscriber against the trust company to recover complainant's proportion of the original securities, defendant admitted that it held the exchange securities for complainant, but wrongfully claimed a lien thereon, and it also appeared that such securities were without a definitely ascertainable market value, a subscriber was entitled to maintain her bill not for the relief prayed, but for a delivery of her proportionate share of the exchange securities, free from lien.

[Ed. Note.—For other cases, see Depositaries, Cent. Dig. §§ 14–19; Dec. Dig. § 11.*]

4. APPEAL AND ERROR (§ 1135*)—DECREE—AFFIRMANCE.

Where defendant did not object to jurisdiction in equity either in the trial court or on appeal, and made no complaint of the decree, and it appeared that complainant had obtained all and the only equitable relief to which, in lieu of an action at law, she could have been entitled under any circumstances, the decree would be affirmed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4454, 4455; Dec. Dig. § 1135.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**5. DEPOSITARIES (§ 2\*)—STOCKS AND BONDS—DISTRIBUTION—SYNDICATE AGREEMENT—CONSTRUCTION.**

A syndicate agreement for the disposition of the stocks and bonds of a projected railroad company provided that the syndicate managers were given the absolute control of the bonds and participation stock certificates until July 1, 1907, that they should have the right to sell the bonds, receive and distribute the proceeds among the subscribers, or exchange the bonds and participation stock certificates during such time, and sell and exchange the right under any contract they might make, to acquire the same, and that defendant trust company, which was a mere depositary, was authorized and directed to deliver any and all the bonds and certificates or new securities as requested by the managers for the purpose of sale or exchange. It also provided that, if the managers had not sold or exchanged the bonds, etc., by July 1, 1907, the trust company should distribute securities to the subscribers, or, if they had been exchanged, then that it should distribute the new securities on that date or as soon thereafter as practicable. It further provided that the enumeration and expression of powers expressly conferred on the managers should not exclude the exercise by them of powers either as to the purchase, sale or exchange of the bonds or stock certificates or otherwise not expressed in the agreement, but they should have the power to do all such additional matters as in their sole judgment should be wise in the interest of the subscribers, etc. *Held* that, the managers having adopted a resolution on June 29, 1908, for the exchange of the bonds and certificates for stock and bonds of another railroad company, and the trust company having been notified of such resolution, it was authorized, as agent of the syndicate managers, to deliver the original securities for exchange after July 1, 1908, without obtaining the express consent of the syndicate subscribers, in the absence of fraud or conspiracy.

[Ed. Note.—For other cases, see Depositaries, Dec. Dig. § 2.\*]

Appeal from the District Court of the United States for the Eastern District of Illinois.

Suit by Marie H. Kelly against the Illinois State Trust Company. Decree for complainant for less than the relief demanded, and she appeals. Affirmed.

W. S. Oppenheim, of Chicago, Ill., for appellant.
L. O. Whitnel, of E. St. Louis, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

MACK, Circuit Judge. Appellant's bill of complaint against appellee as sole defendant alleges that she executed a certain syndicate agreement dated July 20, 1904, purporting to be made between certain persons therein and hereinafter referred to as the syndicate managers and a number of other persons, including appellant, referred to as the subscribers. The agreement is made an exhibit to the bill. In substance, after reciting the willingness of the subscribers to advance the moneys necessary to enable a construction company to build a section of the Illinois, Iowa & Minnesota Railroad from Momence to Rockford, Ill., and to pay for the bonds and stock to be issued on completion, the agreement provides in sections 1 to 6 that the construction company (which, in fact, was owned by the syndicate managers) should receive from the managers from time to time certain moneys and bonds of the railroad, and that the managers might use

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the funds, if they deem it best, for terminal facilities. Section 7 obligates subscribers, on notice from the managers, to pay their subscriptions in certain installments to appellee; that, when the railroad is completed, "the bonds are to be delivered to said syndicate managers as purchasers thereof, and are to be deposited with the Illinois State Trust Company, subject to the order of the managers, for the purpose of and under and subject to the terms and conditions of this agreement"; that the construction company, as soon as it receives the stock of the railroad, shall deposit all of it with the trust company in trust for certain named persons as trustees under a voting trust to continue till July 1, 1910; that "participation certificates covering the stock belonging to the syndicate subscribers shall be issued to the syndicate managers, and held by them with the bonds for the benefit of said subscribers"; that "said Illinois State Trust Company shall issue receipts for all payments made pursuant hereto, in such terms as may be approved by the syndicate managers." Section 8 provides that:

"The syndicate managers are hereby given the right to the absolute control of the bonds and participation stock certificates agreed to be purchased hereunder, until the 1st day of July, 1907. The managers shall hold the bonds so received from the Kenefick Construction Company, and shall within the period above mentioned have the right to sell said bonds at such prices as in their discretion they may see fit, and to collect and receive the money therefor and distribute the same pro rata among the subscribers to said bonds, or shall have the right to exchange said bonds and participation stock certificates during said time, and to sell or exchange the right under any contract they may make to acquire the same; and said Illinois State Trust Company is hereby authorized and expressly directed, from time to time, to deliver any or all of said bonds and participation stock certificates, or new securities, in event of exchange to said syndicate managers, or as they may direct, when and as requested by said managers, for the purpose of such sale or exchange, after said bonds and participation stock certificates or new securities are received by it. If, prior to July 1, 1907, said syndicate managers shall have exchanged said bonds and participation stock certificates, or agreed to exchange the same for other securities, the securities for which said bonds and participation stock certificates have or are to be exchanged shall be deposited with said Illinois State Trust Company in lieu and in the place and stead of said bonds and participation stock certificates, and said syndicate managers shall have the power to sell, exchange, or distribute such new securities as is herein given them to sell, exchange, or distribute said bonds and participation stock certificates. Upon any such sale or exchange being made, the proceeds of sale or exchange shall be deposited with said Illinois State Trust Company, to be by it distributed, upon the order of said syndicate managers, to subscribers. * * * Instead of making sale or exchange of said bonds and participation stock certificates, or new securities, said syndicate managers may distribute the same to subscribers entitled thereto at any time, in managers' discretion, prior to July 1, 1907. In the event said syndicate managers shall not have sold or exchanged said bonds or participation stock certificates by July 1, 1907, on that date, or as soon thereafter as practicable, the Illinois State Trust Company shall distribute said bonds and participation stock certificates to subscribers who have remained entitled thereto, which said distribution shall be in accordance with the share of each as set out heretofore. Or, if said syndicate managers shall have exchanged said bonds and participation stock certificates for new securities, and shall not have sold or exchanged said new securities by July 1, 1907, on that date, or as soon thereafter as practicable, the Illinois State Trust Company shall distribute said new securities to subscribers who have remained entitled thereto in the amounts and ac-

cording to their shares as heretofore set out. Provided, however, if the syndicate managers shall determine it is for the interest of the subscribers hereto that the syndicate be not dissolved at that time, then and in that case the syndicate managers shall have the right to extend the syndicate agreement for a period of one year, or until July 1, 1908. At that time, however, all the securities remaining in the hands of the Illinois State Trust Company, for the syndicate managers, shall be distributed pro rata among the subscribers in accordance with the agreement herein."

Section 9 reads as follows:

"The enumeration and expression of powers hereinbefore expressly conferred upon the syndicate managers shall not be construed as excluding or limiting the exercise by said syndicate managers of powers either as to the purchase, sale, or exchange of said bonds and participation stock certificates, or otherwise, not expressed herein; but they and their respective successors as managers shall have the power to do all such additional matters and things as in the sole judgment of managers, or the persons who constitute managers for the time being, shall determine to be wise and to the interest of subscribers for the purpose of effecting the object of this agreement including such alteration, change, and modification of the terms and conditions of this agreement, and of any contract or contracts which managers may make for the purchase and sale of said bonds and participation stock certificates, the amount and character of bonds and stock to be allotted or disposed of, and the method and manner of such allotment or disposition as managers may from time to time deem advisable, anything hereinafter expressed, implied, or to be inferred therefrom to the contrary notwithstanding."

The word "hereinafter" is evidently a misprint for "hereinbefore," as section 9 is the last section of the agreement.

The bill recites that the trust company accepted the trust provided for by this agreement and has acted thereunder; that complainant paid in $25,000, receiving an interim certificate signed by the trust company, reciting the payment made pursuant to the syndicate agreement, and that the holder of the certificate would be entitled to a pro rata share of bonds, stocks, or proceeds thereof when they "shall be deliverable under the terms of the agreement." The bill then charges that all of the bonds and stock of the Illinois, Iowa & Minnesota Railway Company were deposited with the defendant by the syndicate managers; that no sale or exchange had been made prior to July 1, 1908; that it then became defendant's duty to distribute to her 29 Illinois, Iowa, & Minnesota bonds and some money, her pro rata share; that defendant wrongfully, as against complainant, who had theretofore declined to join her cosubscribers in an extension agreement, canceled all of the bonds in March, 1909, and caused the trust deed to be released; that after October 30, 1908, defendant, at the instance of the syndicate managers received bonds and stock of the Chicago, Milwaukee & Gary Railway Company in pretended exchange for those of the Illinois, Iowa & Minnesota Railway Company and subsequently delivered them to the syndicate managers, who disposed of them.

The bill then charges defendant with conversion of her Illinois, Iowa & Minnesota bonds and stock and with refusing, on request, to render an account of the "said trust property received and possessed by it," prays an account "of all the trust property received by it under the syndicate trust agreeement," and that defendant might

be decreed to pay what shall appear to be the value of the proportion of the Illinois, Iowa & Minnesota bonds and stock held by it for the account of the complainant. A prayer for general relief was added.

In its answer defendant averred that prior to July 1, 1908, the syndicate managers had agreed to exchange the Illinois, Iowa & Minnesota for Chicago, Milwaukee & Gary bonds and stock and had so notified defendant on June 30, 1908; that, subject to a lien for her proportionate share of indebtedness incurred by the syndicate managers, complainant is entitled to 29 bonds and 250 shares of stock of the Chicago, Milwaukee & Gary Railway Company; and that it (the defendant) had ever had complainant's proportion of bonds and stock in its control and made tender thereof. It further averred "that it has in its dealings and transactions as trustee in the said matters and things mentioned and referred to in the bill of complainant dealt in all things fairly, impartially, and rightfully," obeying the commands of the syndicate managers.

We cannot agree with the construction placed by counsel for appellant on the bill of complaint that it is therein "substantially set out that, under date of June 20, 1904, she entered into a syndicate agreement with certain parties and the Illinois State Trust Company as trustee."

[1] The bill, in our judgment, clearly and correctly alleges that this agreement was executed between complainant and a number of other persons, as parties of the second part, and certain persons therein named, called syndicate managers, as parties of the first part. The trust company is not mentioned in the recitals as a party to the agreement, and, so far as the record shows, it did not execute the document.

The agreement was solely between the managers and the subscribers; it imposed the duty upon the managers to deposit certain bonds and stock with the trust company; so far as the bonds and interim stock certificates are concerned the trust company was a mere depositary and in no sense a trustee. Only as to the original stock was it referred to as a trustee, and then as trustee, not for the subscribers or the syndicate managers, but for the persons named as voting trustees. By the very terms of that clause in the agreement on which this bill is based, the clause under which complainant insists that it became the absolute duty of the defendant to make distribution on July 1, 1908, it is recognized that whatsoever securities then remained in the hands of the trust company were held by it for the syndicate managers.

[2] Assuming for the moment the soundness of appellant's contentions as to the construction of the agreement and interpretation of the transactions, the situation on July 1, 1908, would have been this: The syndicate managers had agreed that their agent, the trust company, into whose custody the Illinois, Iowa & Minnesota bonds and interim stock certificates had been placed, should distribute them to the subscribers, including appellant, unless they should have been sold or exchanged before July 1, 1908; the agent had notice of the agreement; they had not been sold, and the steps taken before July

1, 1908, did not amount to an exchange or even to an agreement to exchange the Illinois, Iowa & Minnesota securities; pursuant to orders from its principal, the trust company wrongfully refused distribution, subsequently permitted the syndicate managers to exchange the securities for other bonds and stocks and canceled the original Illinois, Iowa & Minnesota stocks and bonds. What is complainant's remedy against the trust company for the injury done to her through these alleged wrongful acts? Ordinarily not a suit in equity but an action at law.

A mere depositary is not a trustee; no trust relation was created between the parties to this suit; none was contemplated by the agreement between the managers and the subscribers. The trust company was a mere agent, primarily, of the managers, in certain respects, perhaps, of both parties. It held the securities, as the agreement expressly states, for the managers; in distributing them to the subscribers it was therefore to act for the managers. The managers were given the absolute control over the property; the proceeds of a sale or exchange deposited with the trust company were to be distributed by it, but, at any rate under some circumstances, only upon the order of the syndicate managers.

[3] If the trust company had had the possession or control of the Illinois, Iowa & Minnesota securities when this suit was begun, and if they were then without an ascertainable market value, a proceeding in equity might have been proper to secure not damages but the bonds and stocks. As the defendant admitted that it held the Chicago, Milwaukee & Gary securities for the complainant but wrongfully claimed a lien thereon, and moreover, as these securities were without a definitely ascertainable market value, a bill in equity (passing any question of necessary parties that might have been raised by the defendant) was maintainable under the evidence in this case, to obtain, not the specific relief prayed for, but the very relief which the court awarded, viz., the proportionate share of Chicago, Milwaukee & Gary bonds and stock free from any lien.

[4] Inasmuch as defendant did not object to the jurisdiction in equity either in the trial court or in this court, and now makes no complaint of the decree, and inasmuch as complainant has obtained the only and all of the equitable relief to which, in lieu of an action at law, she could have been entitled under any circumstances, the decree must be affirmed.

[5] While a consideration of the true construction of the agreement is thus rendered unnecessary, we may add that we entirely agree with the views of the master and the trial judge that the intention of the parties was to confer the largest possible powers on the managers; that by section 8 alone and a fortiori by section 9 of the agreement the managers were empowered to make the exchange after July 1, 1908, under resolutions adopted June 29, 1908, that the exchange be made, whether or not this action be regarded as technically equivalent to an exchange or a contract of exchange; that the endeavor to obtain the express assent of all of the subscribers to the extension agreement was not an essential but a precautionary step; that

appellant's refusal to join therein did not affect the syndicate managers' right; and that in any event, whatever the ultimate obligation of the syndicate managers to the subscribers might be held to be, defendant, as a mere depositary for the syndicate managers, was not required on July 1, 1908, and thereafter, to act at its peril, but in the absence of fraud or conspiracy, which are not charged, was justified in following the orders and directions of the syndicate managers.

Decree affirmed.