**HACKNER et al. v. MORGAN et al.**

**EASTMAN v. GUARANTY TRUST CO. OF NEW YORK et al.**

No. 325.

Circuit Court of Appeals, Second Circuit.

Aug. 4, 1942.

Meyer Abrams, of Chicago, Ill., and Bennett I. Schlessel, of New York City (Shulman, Shulman & Abrams, of Chicago, Ill., of counsel), for appellant.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Ralph M. Carson and Francis W. Phillips, both of New York City, of counsel), for defendants-appellees.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This suit was originally brought by three plaintiffs, Hackner, Bowman and Ballinger, as a class action for themselves and others similarly situated as one-time holders of 6% Gold Notes of the Van Sweringen Corporation. The complaint alleged that the plaintiffs had been wrongfully induced to accept an offer of the Van Sweringen Corporation made on October 29, 1931, to exchange their notes which will be described more fully below. The relief sought was an accounting, damages for the losses sustained and a receiver to distribute the proceeds to the rightful claimants.

The present plaintiff, Eastman, was not one of the original plaintiffs, but she entered the suit later upon the solicitation of Hackner. Jurisdiction was based upon diversity of citizenship, and the defendants moved for dismissal asserting that less than $3,000 was involved in the claims of each of the three original plaintiffs. This motion was granted by the District Court and was affirmed by us as to all except the present plaintiff, in an opinion pointing out that this was not a true class action. 117 F.2d 95, certiorari denied 313 U.S. 559, 61 S.Ct. 835, 85 L. Ed. 1520. Thereupon the complaint was amended to conform to that decision and to eliminate all reference to a class suit. After the service of the answer and the filing of requested admissions, answers to interrogatories and a deposition of plaintiff, the defendants moved for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Plaintiff countered with a cross-motion for summary judgment based upon defendants' motion papers. The District Court granted the defendants' motion and dismissed the case upon the merits.

Plaintiff has appealed and in connection with the appeal has moved that two of the original plaintiffs, Hackner and Ballinger, be allowed to intervene as appellants and that the record be amended to include Senate Report No. 714 Part 3, 77th Congress, 2d Session. This motion is denied in its entirety. Aside from other possible objections to the admission of the Senate Report on motion for summary judgment, the plaintiff has shown no reason why it, or the testimony upon which it was based, could not have been presented to the lower court for inclusion in the record. The intervention of additional parties as appellants under Rule 21 is improper unless they are directly affected by the judgment. Here the summary judgment was rendered only against Eastman, and in view of our former decision that this was not properly a class suit the other defendants were not prejudiced thereby, but might still attempt to show injury to themselves under the different circumstances surrounding their acceptance of the offer.

The gravamen of the complaint is the inducement of Eastman to exchange her $10,000-worth of Van Sweringen Corporation notes for 50% cash and 50% common stock of that company. These notes were part of a $30,000,000 issue of five year 6% Gold Notes sold to the public in May, 1930. They were secured by a "Trust Indenture" naming defendant Guaranty Trust Company as trustee and providing among other things that until half the issue was retired and cancelled, the Van Sweringen Corporation would maintain "segregated assets" free from lien or pledge equal to at least 50% of the face value of the outstanding notes. The indenture further recited a contemporaneous agreement that in the event that the value of the "segregated assets" declined below the 50% level, Messrs. O. P. and M. J. Van Sweringen would deliver to the Van Sweringen Corporation marketable securities of sufficient value to make up the necessary 50%. These were called "assigned securities" and were to be held by the Corporation in trust for the noteholders.

As the trough of the 1929 depression deepened the entire Van Sweringen system began to weaken, and by October, 1930 new loans were needed. Accordingly J. P. Morgan & Co., Guaranty Trust Company and other banks made loans of $16,000,000 and $23,500,000 respectively to Vaness Company, which owned directly or indirectly all the stock of Van Sweringen Corporation, and to Cleveland Terminals Building Company, which was in turn wholly owned by Van Sweringen Corpora-

tion. One purpose of these loans was to prevent a default in the 6% note issue because of the decline in the value of the "segregated assets" and the "assigned securities." It was therefore provided in the loan agreement that $15,000,000 of the money loaned was to be substituted for the "segregated assets" either in the form of cash or of United States Government Bonds, and this was done. As business conditions grew worse it became apparent that Van Sweringen Corporation would be unable to meet the November 1, 1931 interest payment on the notes. It also appeared that as the market price of the notes declined the corporation had been buying them up and had already acquired over 10% of them. If 50% were bought and retired, the entire amount of the "segregated assets" would have been released.

In the face of this situation the defendants determined that the best thing to do would be to have Van Sweringen Corporation offer the remaining noteholders 50% of the face value of their notes in cash and 50% in common stock of the corporation. To carry out this plan it was necessary for the banks which had made the loans in October, 1930, to Vaness Company to release the common stock of Van Sweringen Corporation which had been pledged as collateral. This was done and the holders of all but $1,213,000 worth of the notes accepted the offer, receiving the November 1 interest of 3% and 50% of the principal in cash as well as common stock of Van Sweringen Corporation for the other 50% of the principal. This stock was of doubtful value at the time and later turned out to be worthless.

The plaintiffs allege that the net result of this exchange was a benefit to J. P. Morgan & Co. and Guaranty Trust Company to the extent that they obtained the "segregated assets" of $7,827,181.86 not needed to acquire $15,000,000 worth of the notes, also the $15,000,000 worth of the uncancelled notes and the balance of the assets. In order to induce the noteholders to accept the offer, it is further alleged, the defendants "caused to have prepared" a balance sheet showing as an asset of Van Sweringen Corporation an investment at cost of $29,253,066.30 in stock of Cleveland Terminals Building Company and an open account due from it of $27,133,533.76, which assets were in fact largely, if not entirely, worthless. A balance sheet of the subsidiary, Cleveland Terminals Building Company, was included with the parent's balance sheet in which asset securities were listed at cost rather than at the current market value which was alleged to be about one-tenth of the cost. On that same balance sheet real estate assets were listed at cost rather than their current value which was substantially less. This, it is contended, was a misrepresentation of the value of the Van Sweringen Corporation which plaintiff relied on in exchanging her notes for cash and common stock.

We agree with the District Court that plaintiff nowhere showed any representations of any sort on the part of the defendants in connection with the offer. Her deposition shows that the only communications she received were the balance sheets and a letter from the Van Sweringen Corporation proposing the exchange. These were mailed to her by her broker, Lee, Higginson & Company. There is no suggestion in any of the affidavits presented that the defendants had anything to do with the preparation of these papers. But even if they did, or if they were, as plaintiff argues in her brief, the real principals behind the scenes, there is no proof that any of the balance sheets were in any way fraudulent or that plaintiff was deceived by them. The only misrepresentation asserted was in the listing of the assets at cost rather than at their then currently depressed market value. However, the items carried at cost were clearly marked as such, and the worst that can be said for it is that it is bad accounting practice. It is not fraud. Especially is this true of the securities, for their current market value and that of the past two years were also presented in a footnote. It thus appears that of the five elements of a fraud action, representation, falsity, deception, scienter and injury, the plaintiff has utterly failed to show the first three. Ochs v. Woods, 221 N.Y. 335, 338, 117 N.E. 305, 306.

Accepting the District Court's interpretation of the complaint as alleging a breach of trust as well as the fraud, we further agree that there was not, nor could there have been, any showing of a trust here. Actually the "Trust Indenture" securing the notes and naming the Guaranty Trust Company trustee was no such thing. In place of the collateral usually deposited with a trustee, there

were assets of the Van Sweringen Corporation which were to be kept segregated —but always in the possession of the company—and there was an agreement by which the Van Sweringen brothers were to deposit additional securities if necessary—but with the company, not the "Trustee." As we have said before, "A trust involves a specific subject matter or res." In re United Cigar Stores Co., 2 Cir., 70 F.2d 313, 315. See Bradford v. Chase National Bank, D.C., 24 F.Supp. 28, affirmed Berger v. Chase Nat. Bank, 2 Cir., 105 F.2d 1001, affirmed 309 U.S. 632, 60 S.Ct. 707, 84 L.Ed. 990. Here there is nothing upon which a trust can be founded.

There is, however, another reason why no action could be proved. For even assuming a fiduciary relationship, the plaintiff has suffered no loss or injury by the exchange. As it was, she recovered 50% of the face value of her notes and the November 1, 1931 interest all in cash. If the exchange had not been proposed, at the worst she would have gotten nothing, had the Van Sweringen Corporation secretly continued to buy up the outstanding notes until 50% was acquired and then withdrawn the "segregated assets"; and at the best the interest would have been defaulted and Guaranty Trust Company would have accelerated the principal. The noteholders would then have received just 50% of the principal plus a worthless stock interest in Cleveland Terminals Building Company plus a doubtful open account of the same company of $27,-154,584.03. A glance at the balance sheet of that company shows that even this debt was practically, if not entirely, worthless since the assets of Cleveland consisted of real property that was not enough to satisfy the mortgages and securities pledged to more than their market value as collateral on a note issue. Thus it appears that the plaintiff failed to show, even prima facie, any injury resulting from her reliance upon the representations which accompanied the offer she accepted, and for this additional reason the judgment was right.

Judgment affirmed.

FRANK, Circuit Judge (concurring).

I concur, but solely on the ground stated in the last paragraph of the foregoing opinion. That is alone enough to sustain the decision. The other issues are less clear and I see no need to consider them.