## Cyrus A. Byers, Appellant, *v.* The Union Trust Company.

[Marked to be reported.]

*Mortgage—Corporation mortgage—Recital—Liability of trustee of a corporation mortgage.*

No action will lie against a trustee of a mortgage of a corporation for a loss occasioned to a bondholder under the mortgage by reason of the fact that the mortgage was not a first mortgage, where there is no statement in the bond that the mortgage was a first mortgage, and the only matter contained in the mortgage on the subject is the recital of a resolution passed at a meeting of the stockholders of the corporation that the mortgage should be a first mortgage.

Argued April 1, 1896.   Appeal No. 78, Jan. T., 1896, by plaintiff, from judgment of C. P. No. 2, Phila. Co., June T., 1895, No. 247, on demurrer to statement.   Before GREEN, MC-COLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Assumpsit against trustee on a corporation mortgage.

Demurrer to statement.

The plaintiff's statement was as follows :

1. The plaintiff, Cyrus A. Byers, brings this action against the Union Trust Co. to recover the sum of $4,000, being the amount paid by him on June 19, 1889, to the Elk Coal & Coke Co., the name of which was subsequently changed to the Fisher Coke Co., for eight of its bonds, each of the denomination of $500, at six per cent interest, and dated June 1, 1889.   Said bonds are numbered as follows : 53, 54, 55, 56, 77, 78, 79 and 80.

These bonds were purchased by the plaintiff upon the faith of a certificate indorsed on each of said bonds, and signed by the defendant, that the mortgage by which said bonds were secured was a first lien on the mortgaged property.   The mortgage was not a first lien, and this fact was known to the defendant when the said bonds were so certified by it and delivered to the Elk Coal & Coke Co. for sale, and it was not known by the plaintiff that the mortgage was subject to a prior judgment lien, but said certificate enabled the Elk Coal & Coke Co. to sell him the bonds.   Subsequently the mortgage upon which said bonds were issued was discharged by a judicial sale under a prior judgment lien, and thereafter plaintiff elected to rescind his purchase, and on January 25, 1895, tendered said bonds to the defendant, which declined to pay him for them, and the Fisher Coke Co. also declined to repay plaintiff upon said bonds being tendered and demand made on March 13, 1895, wherefore plaintiff brings this suit to recover said purchase money of $4,000 from the defendant, with interest at six per cent from June 1, 1892.

2. The details of the transaction are as follows :

These bonds were purchased by plaintiff from the Elk Coal & Coke Co.   It subsequently changed its name to the Fisher Coke Co., and is now insolvent.   The bonds were so purchased upon the faith of the written representation made to him by the defendant and by the Elk Coal & Coke Co., and contained

both in the hereinafter named mortgage and the bonds, that said bonds were secured by a certain mortgage for $40,000, made June 1, 1889, by the Elk Coal & Coke Co. to defendant as trustee, and that said mortgage was a first lien on the property therein described, and which was situated in Elk county, Pa.

The said mortgage of June 1, 1889, recites as follows, touching the lien thereof:

" That the said bonds and indebtedness authorized aforesaid shall be secured by a first mortgage upon the 200 acres of land in Jay Township, Elk County, Pa., lying around the mouth of the mines, the plant and improvements thereon, and to be placed thereon and also the leasehold interest in the 1,000 acres of mineral lands contiguous thereto—said mortgage to be a first lien upon said property."

The said bonds purchased by plaintiff recite the aforesaid mortgage of June 1, 1889, and further state, " . . . . which mortgage reference is hereby made for a full description of the property mortgaged to secure the payment of said bonds and interest and for the remedies to enforce the collection of the same."

There is further indorsed on each of said bonds a certificate signed by the defendant, the Union Trust Co., as trustee in the following words:

" This bond is one of a series of bonds within mentioned, and is secured by mortgage, as therein described, duly recorded in Elk County.

(Signed) " THE UNION TRUST CO., Trustee,

" By J. SIMPSON AFRICA, President."

At the time plaintiff purchased these bonds, he did so wholly upon the faith of these representations of defendant, and although plaintiff was then a director of the said Elk Coal & Coke Co., he nevertheless then believed said representations to be true, and this was the essential inducement to plaintiff to purchase the same, but the plaintiff says that he afterwards, about the summer of 1892, discovered that said mortgage was not a first lien on the mortgaged property by learning that it had been discharged by a judicial sale under a prior judgment lien.

Plaintiff further avers that when he purchased said bonds the defendant knew that said mortgage was not a first lien, and plaintiff avers that through said certificates, indorsed by said

defendant on said bonds, the Elk Coal & Coke Co. was enabled to sell them to him as a first lien, upon which representation the plaintiff wholly relied, as aforesaid, and for this reason purchased the bonds.

Plaintiff would not have purchased said bonds had he known that they were not a first lien.

3. The defendant upon the sale of the mortgaged property under the prior judgment lien purchased the same and notified plaintiff of the purchase about the summer of 1892.

Defendant at the same time invited plaintiff to contribute ratably to his holding of bonds the sum necessary to repay to defendant the amount expended in purchasing the property. It was at the same time proposed to plaintiff by the defendant that he should surrender his bonds, and that he should in consideration thereof become a joint beneficial owner of the said property, together with the other bondholders, and that the legal title to the property should be vested in the said defendant, the Union Trust Co., as trustee. Plaintiff declined to have anything to do with this complicated arrangement, and elected to stand upon his legal right of rescission.

4. Plaintiff is informed that the subsequent vicissitudes of the property have been as follows: The Elk Coal & Coke Co., subsequently known as the Fisher Coke Co., went out of business for lack of funds, and has no visible assets, as far as plaintiff knows, and is insolvent. The Union Trust Co. leased the property which it had purchased to one William M. Harrison, who was not able to pay the rent, and he sublet to the Standard Coal & Coke Co. This was an irresponsible company, promoted by said William M. Harrison for the purpose of becoming such lessee in conjunction with persons interested in the said Fisher Coke Co. The Standard Coal & Coke Co. was also unable to pay the rental or to pay its own obligations, and fell into the hands of a receiver, since which time said William M. Harrison and one Duncan and others are said at intervals to have been conducting from time to time alleged negotiations with the Union Trust Co., with a net result of nothing except further incidental complications, including a sale by a receiver of the Standard Coal & Coke Co. Plaintiff never recognized any of these transactions, and always refused defendant's request to take part therein.

The main feature in them seemed to be to endeavor to furnish means to pay the Union Trust Co. individually the first hoped-for proceeds, as if it were a preferred creditor, and for the Union Trust Co. as a voluntary trustee to assign the trust to any person to be named by the holders of a majority of the remaining bonds which had been issued under said discharged mortgage for $40,000. Except the bonds owned by the plaintiff and some others owned by said Union Trust Co., all of said bonds belonged to the stockholders in the Caledonia Coal Co., which had leased part of its property to said Elk Coal & Coke Co., afterwards Fisher Coke Co., which had no means to develop the property or to pay royalties except in so far as it obtained money by selling to plaintiff and others its bonds under said mortgage of $40,000 to the Union Trust Co., defendant herein. As before mentioned, however, plaintiff declined to be a party to any of these schemes. The plaintiff was not interested in the Caledonia Coal Co. The net results of these various arrangements would have been to have paid the Union Trust Co. first, and the plaintiff's interest, if he had consented to the same, would have been left thereafter to an adverse substituted trustee. Notwithstanding the refusal of plaintiff to take part in this scheme or to consent thereto, he avers that defendant, as owner of some of the bonds of the Elk Coal & Coke Co., has entered into said agreement with all the other bondholders, except the plaintiff, and that the mortgaged property is now held by the defendant as a voluntary trustee, first for itself as a preferred beneficiary for the amount it paid for the bonds of the Elk Coal & Coke Co. owned by it, and in the further trust that on defendant being thus paid it will turn over the trust to the nominee of a majority of the remaining bond owners, all of whom, as before mentioned, are stockholders in the Caledonia Coal Co., and their interests are adverse to plaintiff's. In pursuance of this new voluntary trust the defendant is now managing, or trying to manage, the mortgaged property thereunder.

5. Plaintiff avers that he has never in any way surrendered or wavied any right, claim or demand of his against the defendant. He received on December 17, 1893, from defendant's trust officer a letter as follows:

"I enclose you herewith our check to your order for $240, the same being one year's interest at 6 per cent. on your interest in the property of the Elk Coal and Coke Co., as represented

by $4,000 of the bonds thereof *heretofore surrendered by you.* Do me the favor to sign and return the enclosed receipt."

Plaintiff avers that he declined to receive the $240 upon the terms set forth in the foregoing letter. Plaintiff called on defendant, and said that he had not surrendered his bonds, and still declined to do so, and renewed his refusal to agree to any of the plans which had been formulated by the defendant concerning the mortgaged property, and plaintiff further notified defendant that he did not waive any of his rights, but that he was willing to receive the $240 as one year's interest on his $4,000, pure and simple, if the defendant was willing to take a receipt upon these terms, which the defendant agreed to, whereupon defendant received the $240.

6. After the discovery by the plaintiff that the lien of the mortgage had been discharged by the sale under the prior lien, upwards of a year passed in the various efforts made by the defendant to secure a surrender of plaintiff's bonds upon the new trust hereinbefore set forth. For some time thereafter nothing was done, and later on plaintiff consulted counsel, who communicated from time to time with the defendant, with a view of having defendant repay plaintiff said $4,000, in which way another year passed, when, being unable to induce the defendant to pay him back the purchase money for said bonds, the plaintiff gave notice, both to the defendant and to the Fisher Coke Co., that he had elected to rescind the said purchase, and he thereupon, on January 25, 1895, tendered the said bonds to the defendant, which declined to pay him for the same, and plaintiff still retains said bonds for the defendant's account. Plaintiff avers that the defendant has in no way been injured by the plaintiff's delay in electing to rescind the purchase of said bonds, and the plaintiff never in any way waived his legal rights against defendant, or induced the defendant to suppose that he would do so, and that no act or omission of plaintiff has in any way prejudiced the defendant in the premises. The plaintiff therefore prays judgment against the defendant for the sum of $4,000, with interest thereon from June 1, 1892, with interest at 6 per cent.

Defendant's demurrer was as follows:

1. The plaintiff had no right of rescission of his contract of purchase of the bonds by reason of any act of the defendant.

2. The defendant entered into no contract with plaintiff for the purchase of the said bonds, and is not responsible for any construction which the plaintiff, without the knowledge or assent of the defendant, improperly placed upon the certificate signed by it upon the said bonds. The said certificate was not in law an inducement to the plaintiff to purchase the said bonds, and the defendant is not liable to the plaintiff if he acted upon the faith of the said certificate beyond the legal effect thereof.

3. Even if there were any implied or express guarantee by the defendant by reason of the said certificate and the facts set out in plaintiff's statement of claim, the plaintiff has suffered no damage therefrom.

4. It appears from the facts set forth in the plaintiff's statement that the real estate mentioned in the mortgage must now be presumed, in law, to be held by the defendant in trust to secure (inter alia) the plaintiff's bonds, and that all prior liens (if any) have been discharged. These circumstances show that the defendant has fully kept its agreements contained in the certificate, and that no cause of action exists.

5. The plaintiff was at the date of the mortgage a member of the corporation mortgagor and a director therein. He is thereby estopped from denying the truth of the recital that the mortgage was a first lien, the certificate of the trustee being given upon the faith (inter alia) of such recital.

6. When the defendant bought at sheriff's sale the lien of the mortgage reattached, and the undertaking in defendant's certificate was fulfilled: 36 W. N. C. 73.

7. The certificate signed by the trustee upon the bonds was merely an identification of each bond as one of a certain series of bonds entitled to the security of a certain mortgage, and no liability exists upon the part of the trustee under the said certificate other than such as arises from the said purpose and intent thereof.

8. The certificate upon the bonds was not a guarantee by the trustee of the priority of the lien of the mortgage, and the defendant is not liable to the plaintiff if the statement to that effect, contained in the mortgage, was incorrect.

The court sustained the demurrer and entered judgment for defendant.

*Error assigned* was in entering judgment for defendant.

*James W. M. Newlin,* for appellant.—That the defendant is liable for the money lost by the plaintiff there can be no doubt either in reason or under the authorities: Cornelius v. Molloy, 7 Pa. 300; Pearson v. Morgan, 2 Bro. Ch. 388; Lyde v. Barnard, 7 M. & W. 101.

The plaintiff had a right to rescind: Williamson v. N. J. S. R. R., 28 N. J. Eq. 277; 21 Am. & Eng. Ency. of Law, 94; Clark v. Everhart, 63 Pa. 347; 21 Am. & Eng. Ency. of Law, 31; Holmes's App., 77 Pa. 53.

*John Hampton Barnes, Geo. Tucker Bispham* with him, for appellee.—There is no express covenant in the mortgage that the same is a first lien upon the property conveyed, nor is there any such statement contained in the bond.

The directors of a company are bound to know its ordinary proceedings: Bigelow on Estoppel, 611; Whiteselle v. Loan Agency, 27 S. W. Rep. 309; Clark v. Edgar, 84 Mo. 106.

If it be true, as averred in the statement, and as must be assumed for the purposes of this argument, that the trustee knew of the existence of a prior judgment at the time of the certification of the bonds, such fact must of necessity have also been known to the company against which such judgment had been entered; and the certificate of the trustee upon the bond was a mere act of authentication, made by it as agent of the maker of the bond by such maker's direction, and was in reality the act of the maker of the bond; such certificate is no part of the bond proper, and creates no contractual relation whatever between the maker of the certificate and holders of the bond: Edwards v. Marcy, 2 Allen, 486; Maas v. Ry. Co., 83 N. Y. 223; Butterfield v. Cowing, 112 N. Y. 486.

OPINION BY MR. JUSTICE GREEN, May 4, 1896:

We do not consider that there is any basis of liability on the part of the defendant to pay the claim of the plaintiff in this case. The defendant is the mere trustee of the mortgage given by the Elk Coal & Coke Company for the protection of the bonds issued by that company. None of the money derived from the sales of the bonds was received by the defendant, and

no engagement to pay any of the bonds was made by it. It is claimed for the appellant that the certificate signed by the trustee, and printed on the bond, created a liability to pay the money due on the bond by the Elk Coal & Coke Company, because it contained an assertion that the mortgage was a first lien on the lands described therein and that this assertion was false. It is difficult to understand how this defendant would be liable even if the certificate contained such an assertion, but as it does not, there is not the least vestige of liability arising from it. The certificate is in these words, "This bond is one of a series of bonds within mentioned and is secured by mortgage as therein described duly recorded in Elk county." The description referred to is that which is contained in the bond. Recurring to the bond we find it contains a recital that each bond is one of a series of bonds comprising eighty in all, of $500 each, amounting to $40,000 in the aggregate. It recites further that the payment of the bonds is secured by a mortgage of even date upon the real estate, plant, improvements, leasehold interest and corporate franchises of the Elk Coal & Coke Company particularly described in the mortgage to the Union Trust Company as trustee, in trust to secure the full payment of the bonds as they fall due, "to which mortgage reference is hereby made for a full description of the property mortgaged to secure the payment of the said bonds and interest and for the remedies afforded to enforce the collection of the same."

Not one word is contained in the bond declaring, even by way of recital, that the mortgage is a first lien on the property, and as the bond only is referred to in the certificate, there is nothing upon which to found an allegation that the defendant undertook in any manner whatever to contract, or guarantee or represent, that the mortgage was, or was to be, a first lien. But the plaintiff's case is worse than this. Not even the mortgage itself contains any covenant or guaranty that it is, or was intended to be, a first lien, and hence it would not be possible to imply an undertaking or assertion of that character from the reference to it made in the bond. The only matter contained in the mortgage on this subject is a recital of a resolution, passed at a meeting of stockholders of the Elk Coal & Coke Company, that the mortgage was to be a first lien, but as in point of fact it was not a first lien it simply follows that the board of direct-

ors, of which the plaintiff was one, did not perform their duty in that respect. While the plaintiff might well be considered responsible for this failure of duty on his part, it is quite out of the question to hold the defendant responsible for the dereliction of the plaintiff, or of the whole board, in this regard. The case is entirely without merit in any point of view and the learned court below was right in sustaining the demurrer.

Judgment affirmed.