# Bell, Appellant, *v.* Title Trust & Guarantee Co.

*Corporations—Corporate mortgagee—Certifying issue of bonds—Trusts and trustees—Negligence—Recording—Delivery.*

1. Where a trustee of a corporate mortgage certifies upon a bond covered by the mortgage that it is one of an issue of bonds of a certain corporation described in an indenture in the bond referred to, such certificate does not render the trustee liable to a purchaser of the bond for a loss resulting from the fact that the mortgage had not been recorded.

2. In such a case, as the trustee did not obligate itself in any way to guarantee the soundness of the bonds, it was not within its duty to see whether the mortgage was recorded or not.

3. It is not necessary that there be a manual delivery of a corporate mortgage by the trustee in order to constitute a delivery. Delivery may be informal, and where the same man is president of both the mortgagor and the mortgagee and makes delivery himself, this is sufficient.

4. Where the purchaser of a bond accepts it under the usual certificate of the trustee that it was one of a certain issue "described in the within indenture," and neglects to examine the indenture and ascertain the nature of the bonds and status of the mortgage, he is himself negligent, and must bear the consequences of his neglect.

5. Where series of bonds secured by a trust deed bear upon their face a clear reference to the deed, holders of such bonds are put upon inquiry by recitals and charged with notice by the terms of the deed.

6. If the mortgage expressly provides that the trustee is exempt from responsibility as to the validity of the bonds or the disposition of the trust mortgage, a purchaser of the bonds is bound thereby.

7. In such case it is not particularly material whether the trustee did or did not receive the money for the bonds sold.

Justices WALLING, KEPHART and SCHAFFER concur in the judgment.

Argued November 29, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 111, March T., 1927, by plaintiff, from order of C. P. Cambria Co., June T., 1925, No. 108, refusing to take off nonsuit, in case of J. G. Bell v. Title Trust & Guarantee Co. of Johnstown. Affirmed.

Trespass for negligence in certifying corporate bonds. Before McCANN, J.

The opinion of the Supreme Court states the facts.

Nonsuit; refusal to take off. Plaintiff appealed.

*Error assigned,* inter alia, was refusal to take off nonsuit, quoting record.

*A. Lawrence Wetherill,* of *White & Wetherill,* with him *Jones & Griffith* and *Robert K. Bell,* for appellant. —Defendant was guilty of gross negligence in certifying the bonds and in allowing them to be issued: Frazier v. R. R., 38 Pa. 104.

It is our contention that, as there was no delivery of this mortgage, there was no mortgage.

The question of delivery is a question for the jury: Cummings v. Glass, 162 Pa. 241; Lewis v. Merryman, 271 Pa. 255.

Not only were defendants guilty of gross negligence, but they were also guilty of deceit: Huber v. Wilson, 23 Pa. 178; Chambersburg Saving Fund Assn.'s App., 76 Pa. 203.

*Philip N. Shettig,* for appellee.—It is the duty of every purchaser of corporate bonds to make reference to and examination of the mortgage which secures said bonds, particularly when there is a specific reference contained in the bonds themselves to the mortgage: Penna. Steel Co. v. Ry., 189 Fed. 661; Farmers Trust Co. v. Clay Co., 41 Pa. C. C. R. 578.

The trustee was not liable to plaintiff: Com. v. R. R., 122 Pa. 306; Northampton Trust Co. v. Traction Co., 270 Pa. 199.

OPINION BY MR. JUSTICE FRAZER, January 30, 1928:

The learned trial judge in his order sustaining the motion for a compulsory nonsuit was of opinion the case is ruled by Byers v. The Union Trust Co., 175 Pa. 318. It is true that in the Byers litigation the basis of the dispute, the facts and circumstances considered and the principles laid down, are similar to those involved in the case before us. The former, however, was an action of assumpsit against the trustee under a corporation mortgage, while the one at hand is an action in trespass alleging gross negligence and deceit against a like trustee. In both cases the purpose is to recover sums of

money, with interest, paid by plaintiffs in the purchase of bonds by the corporations of which defendant in each case was trustee under the trust mortgage, intended as security for the bond issue. It was a matter of contract in the Byers Case; here we have a question of tort, and since it, at least in form, is an action in trespass, we shall treat it as such. If we were to follow in detail plaintiff's very extended statement of claim and its elaborate presentation of averments, wherein the charges against defendant trust company embrace false representations, wilful deceit and gross negligence, we should be led into an unnecessarily wide range of discussion. Moreover, admissions in plaintiff's argument, appearing in the record, remove all need for such extended discussion, as he there states "it is true that in the certification of a mortgage a trustee will only be held for gross negligence or wilful default, but our contention is that in the present case the defendant is guilty of gross negligence in certifying the bonds and in allowing the issuance." This statement simplifies consideration of the questions in dispute, inasmuch as it is upon such certification by defendant, upon three bonds, that plaintiff alleges its liability arising out of plaintiff's purchase of the bonds, for the total sum of $3,000 of the issue made by the Savage Fire Brick Company. Plaintiff declares, and it is not disputed, that the trust company had, as trustee under the trust mortgage, placed this certificate on each bond:

"This is one of the issue of bonds of the Savage Fire Brick Company described in the within Indenture. Title Trust and Guarantee Company, Trustee By M. D. Bearer, Secretary."

Plaintiff declares that, relying upon this certification, he purchased three bonds, "and but for the said certificate signed by the defendant, the plaintiff would not have purchased said bonds and paid the consideration therefor," and that, because the bonds "are without value," the money invested is lost.

We think the dispute settles down to these questions: What did this certification cover in the way of placing responsibility upon defendant, and wherein was defendant guilty of deceit and gross negligence in making such certification? It is evident, as the testimony in the case shows, that the trust mortgage, which appellant claims should have been in the special care of the trustee, was in fact never placed on record. It is not in dispute that at the time the second issue of bonds to the amount of $500,000 was made, there was outstanding and unpaid a debt of approximately $186,000, created by a former issue of bonds in that amount by the fire brick company and it is also a fact that there was a foreclosure sale under the first mortgage of the property of the brick company to secure that indebtedness, but as the purchaser did not comply with the terms of this sale, a second sale was had, and the price realized then was $2,600. These proceedings in foreclosure were instituted by the creditors' committee holding the first mortgage bonds of the fire brick company, and it was testified at the trial by the attorney acting for the committee that he had been instructed by that body to bid in the property at $190,000, which, as he testified, was the value put upon it by appraisers engaged by the creditors' committee to make a valuation; and it was because, as appellant contends, of this forced sale under the first issue of bonds and the trustee's neglect to have recorded the mortgage securing the second issue so as to make the bonds a lien upon the brick company's holdings, that his investment of $3,000 was lost. He claims, likewise, that at the time he purchased his three bonds he was not aware that the mortgage securing the second issue, which included those purchased by him, was not on record, and that none of these facts were disclosed to him by defendant company, trustee under that mortgage, consequently he became the victim of deceit and gross negligence on the part of the trustee.

We fail to see that appellant has any basis for his charges against the good faith of appellee or for his claim of right of recovery from it of the $3,000 he invested in the bonds. His error is in assuming that the brief recital, in form of a certificate, on the bonds by the Title Trust and Guarantee Company, over the signature of its secretary, was in fact a certification and guarantee of the validity of the bonds and which, therefore, rendered the trustee liable for his loss. A certificate of this character carries with it no such burden and creates no such obligation. Its phraseology alone would prevent an interpretation of that sort. It is merely a bare declaration that the bonds in this dispute were of the issue of bonds by the Savage Fire Brick Company as "described in the within indenture," that is, as narrated in the body of the bond itself. We said in Byers v. Trust Co., 175 Pa. 318, 325, a case similar to the present one: "We do not consider that there is any basis of liability on the part of the defendant to pay the claim of the plaintiff in this case. The defendant is the mere trustee of the mortgage given by the Elk Coal & Coke Company for the protection of the bonds issued by that company. None of the money derived from the sales of the bonds was received by the defendant, and no engagement to pay any of the bonds was made by it." That language applies to the case at hand. There is nothing in the evidence to even indicate that the trustee was the recipient of moneys received for the sale of the obligations, and as for the three bonds bought by appellant, they were purchased, as he himself testified, at a bank other than that of the trustee. It is not particularly material here whether they did or did not receive money for the bonds sold, as they certainly entered into no engagement to indemnify purchasers of the securities for whatever loss they might sustain, should the bonds prove valueless. It is not to be supposed that a trust company, a bank or other responsible financial institution, acting upon the intelligence and experience

of its officers and presumably guided by legal representatives, would so lightly intend and agree to assume, by means of a brief certificate merely identifying bonds to be those of a designated issue, the heavy obligation of guaranteeing the validity of securities issued by another corporation for which it had consented to act as trustee under a trust mortgage, and thus render itself answerable to the extent of the security given by such mortgage, and accept a liability to holders of the obligations for any loss that might be incurred, by the subsequent lack of value of the bonds. "It has never been understood here or elsewhere, as far as we are informed," the court said in Bauernschmidt v. Maryland Trust Co., 43 Atl. 790, in the Maryland Court of Appeals, "that a trustee under a mortgage like the one before us, creating as it does a mere trust to certify the bonds, did more by the form of the certificate adopted than to thereby identify them as the bonds of the company which the mortgage was executed to secure."

Appellant contends the "duty devolves upon such corporation mortgage trustee to see that the mortgage is delivered and recorded." In view of what has already been said as to the extremely limited range of authority and responsibility of the trustee, we might properly dismiss that contention by saying, as the trustee had not obligated itself in any way to guarantee the soundness of the bonds, it was not within its duty to see whether the mortgage was recorded or not. We, however, give that aspect of the case further consideration. Undoubtedly there was a mortgage in existence in this transaction, intended as security for the second bond issue of $500,000 and legally executed and signed by the properly authorized officers, with the proper seal attached as the evidence discloses. It is sufficient where the seal of the company has been affixed to a mortgage by the secretary of the company (4 Cook on Corporations 3619); and, says the same authority, page 3628, "it is not necessary that there be a manual delivery of the mortgage

by the trustee in order to constitute a delivery. Delivery of a mortgage may be informal, and where the same man is president of both mortgagor and mortgagee and makes delivery himself, this is sufficient." That was the course of procedure in the present case. But the mortgage was not placed on record. That requirement was not an affair of the trustee, as under the general rule a trustee's certificate that is silent as to recording does not render the trustee liable in case the mortgage is not recorded: 4 Cook on Corporations 364. In the certificate under consideration here there was no reference to a mortgage, but there was a reference to an "indenture," meaning either the bond, which describes the mortgage minutely, or the mortgage itself; and that description in the bond, as purchased by appellant, provided in sufficient detail the information any prospective buyer of these securities might need to satisfy himself of their status as a safe investment. Manifestly, as the testimony shows, appellant read the certificate of the trustee on the bonds he bought; he could see at a glance that the certification contained no express or indirect assumption of liability on the part of the trustee, or that it bore no terms of warranty by the trustee, and that it was certainly minus expressions as to what security was behind the bonds, except the brief statement that it was a bond issued by the Savage Fire Brick Company, as "described in the within indenture." Apparently he was satisfied with that meagre information as set forth in the certificate. Appellant himself was in the "investment business," which, according to his testimony, "included the sale and purchase of securities" and "the purchasing of bonds"; and if his own knowledge as to risks frequently attending transactions in purchasing securities did not prompt him to an investigation of the nature of the bonds and of the existence and status of the mortgage particularly detailed therein, that was a lack of caution and forethought, the consequences of which must rest upon his own shoulders.

Asked at the trial, "Did you ever inquire whether the mortgage was recorded or not?" he replied, "I did not." So, with the doors wide open to reach the information a watchful buyer would consider necessary, plaintiff entered upon none of them. Learning that there was such a mortgage as described in the bonds, a casual investigation would have developed the fact that this instrument was not on record, and that information, available to him before he paid for the securities, would have alone been sufficient to put him on his guard. Where a series of railway bonds secured by a trust deed bear upon their face a clear reference to the deed, holders of such bonds are put upon inquiry by recitals and charged with notice by the terms of the deed: Grant v. Winona & S. W. Ry. Co., 85 Minn. 422.

Lacking prudence on his own part as to the protection of his interests, with opportunity to ascertain the actual status of the bonds, previous to their purchase, appellant cannot now seek to unload that negligence upon the trustee and allege a breach by it of a trust it had not assumed and demand a recovery from it of whatever losses he may have sustained by his own lack of investigation as to the soundness of an investment he made by his own volition. He cannot be permitted to stand passively by and speculate as to the result of an investment, and, after the future has disclosed his investment was a mistake, rescind the contract of purchase for fraud, and recover back the consideration paid for the stock: Burwash v. Ballou, 230 Ill. 34.

His position is still more weakened by the fact that by the terms of the mortgage itself, as shown by quotations from it in appellee's affidavit of defense, the trustee was definitely made exempt from responsibility as to the validity of the bonds or the disposition of the trust mortgage. The instrument distinctly declares that the "trustee shall not be under any obligation to see to the recording of this indenture or of any other instrument of further issuance"; and further that the "authentication

[the certificate] of any bond by the trustee shall not be taken to be any guarantee as to the character, status or security of such bond, but only that it is in fact one of the bonds issued hereunder," and the trustee was not to assume responsibility for the correctness of the recitals and statements in the trust mortgage. We hold therefore that no wilful breach of trust, false statement or gross negligence on the part of the trustee has been shown by the evidence in the case. The nonsuit was properly entered, and the judgment of the court below in refusing to take it off is affirmed.

Mr. Justice WALLING, Mr. Justice KEPHART and Mr. Justice SCHAFFER, concur in the judgment.