**DRISCOLL et al. v. FITCH et al.**

District Court, S. D. New York.

April 6, 1943.

Ben A. Matthews, of New York City (Addison S. Pratt, Joseph H. Schnabel, and M. L. Allen, all of New York City, of counsel), for plaintiffs.

Moses & Singer, of New York City (Sam L. Cohen, Alfred W. Bressler, Henry Schneider, and Harry H. Wachtel, all of New York City, of counsel), for defendant Public Nat. Bank & Trust Co. of New York.

BRIGHT, District Judge.

The defendant, The Public National Bank & Trust Company of the City of New York, moves for summary judgment. The action is brought for and on behalf, and for the benefit, of plaintiffs and all the holders of certain unsecured indentures issued by Associated Gas & Electric Company (called Ageco), the parent corporation, and Associated Gas & Electric Corporation (called Agecorp), one of its subsidiaries, to recover from all of the defendants $10,579,-700, with interest. Plaintiffs also seek a further recovery from the bank alone of $302,043.38, claimed to have been paid to it by Agecorp and plaintiffs for its services as trustee and otherwise. This latter claim has been reduced upon this motion to $14,-662.40. The basis of the suit is plaintiffs' claim that $10,579,700 principal amount of 5½% Convertible Investment Certificates, previously issued by Ageco, which had been delivered to the escrow agents and by them deposited with the bank, were not presented by the defendants for payment on November 15, 1938, their due date, and in failing so to do, defendants acted in bad faith, were guilty of gross negligence, and breached their trusts.

The other defendants were "Escrow Agents" under an agreement dated May 15, 1933, between them, Ageco and Associated Gas & Electric Service Company, Inc. The bank was a depositary appointed pursuant to that agreement by the escrow agents on July 12, 1933. On November 15, 1938, the due date mentioned, the bank was also an indenture trustee so-called under seven indentures, five executed by Ageco, and two by Agecorp, under six of which some of the debentures referred to hereafter as "protected debt securities" had been issued and were then outstanding.

The bank's contentions, among others, are, that it is entitled to judgment (1) because it was not charged with any duty, either as depositary under the escrow agreement or as indenture trustee, to present the investment certificates for payment; and that it was expressly instructed by the escrow agents, who were the legal owners of the investment certificates, not to present them for payment; (2) that assuming that it had a duty to present them, it would not be liable since non-presentment did not constitute gross negligence or bad faith on its part, the only grounds upon which liability was imposed upon it by the express provisions of the escrow agreements and indentures under which it was acting; (3) that plaintiffs cannot maintain this action because at the time of the alleged wrongdoing, they were not and are not now holders of any of the securities for whose benefit the action is alleged to have been commenced, and this action cannot be maintained as a representative or class action; and (4) that the action is barred by the three-year statute of limitations of New York.

The facts, it is admitted, are not in dispute. Simultaneously with the making of the escrow agreement of May 15, 1933, Ageco addressed a letter to the holders of its debentures, calling attention to the possibility that it might not be able to continue to pay its interest charges because of the substantial decline in its earnings, higher taxes and reduction in rates; that receivership and forced reorganization must necessarily follow if fixed interest charges were not met; that readjustment of fixed interest charges was in accordance with the trend of the times; and that some of its debenture holders had urged the preparation of a plan for the exchange of present fixed interest debentures for income debentures. It proposed as such a plan, called the "Recap Plan" three different options for the exchange of outstanding debentures, and stated that the debentures turned in would be deposited in escrow under an agreement summarized on the back of the letter.

All of the defendants had full knowledge of the circular letter, the summary of the

agreement, and the plan offered. The debentures then outstanding were called in the escrow agreement "old debentures" and included, among others, the 5½% Convertible Investment Certificates due 1938 above mentioned. The debentures to be issued in exchange under any of the three options were termed "new debentures". All of the old and new, together with all other debentures of Agecorp (consisting only of 8% bonds due 1940) were termed "protected debt securities". The old debentures exchanged for the new were termed in the agreement "escrow debentures".

The bank accepted its appointment as depositary, and, from time to time, there were delivered to it old debentures turned in for exchange, among which were $10,579,700 of the 5½% Convertible Investment Certificates, and that amount was in its custody on November 15, 1938, their due date. There were in addition on that date $1,140,600 principal amount of such investment certificates outstanding in the hands of the public. These were all of that class of certificates outstanding which became due on November 15, 1938.

Ageco had deposited sufficient funds to pay on their due date the $1,140,600 of debentures outstanding in the hands of the public. It had not the funds to pay the balance of the debentures then owned by the escrow agents and deposited with the bank, and had so advised the escrow agents, who, on November 14, 1938, adopted a resolution which recited the deposit with them of the 5½% investment certificates in the amount mentioned, that $1,140,560 (less than 10% of the amount then outstanding and due on November 15, 1938) were held by the public, that Ageco had ample funds to pay the principal amount of the certificates held by the public but had not funds to pay the principal of those held by the depositary for the account of the escrow agents, and concluded that the investment certificates held in escrow "shall not be presented for payment either on November 15, 1938, or at any time thereafter, unless and until a default shall be made in the payment of either principal or interest of any such protected debt security, and the period of grace, if any, shall have expired; that the depositary shall continue to hold said investment certificates under the escrow agreement and for the account of the Escrow Agents, and shall not present the same for payment unless and until instructed so to do by the Escrow

Agents". A certified copy of that resolution in its entirety was delivered to the bank on November 15, 1938. The escrow certificates were not presented for payment, and plaintiff claims that thereby damage to the extent of their par value and interest was caused to the protected debt security holders.

The escrow agreement provided, among other things: full title to all of the old debentures as and when they should be exchanged for the new, should vest in the escrow agents subject to the covenants and conditions of the agreement, and they should be held and disposed of by the agents for the equal and ratable benefit and protection of all present and future holders of protected debt securities. All old debentures received under the plan should be forthwith delivered to the depositary. The escrow agents from time to time might request the depositary to take such action necessary to carry out any of the powers conferred upon the agents by the agreement, and the depositary should take such action and should be fully protected in acting upon such request. Until the retirement of all new debentures, the agents were to collect the interest payable on the escrowed debentures, and in the event of a failure of payment, the agents were entitled to enforce payment. Until all old debentures outstanding on the date of the agreement shall have been deposited in escrow or retired, the "Escrow Agents (a) shall collect the principal on any escrowed debentures that may become due, whether at maturity, redemption or otherwise", and apply such payments, ratably, to the payment, redemption or retirement by purchase of protected debt securities in accordance with the principal amounts of the several issues at the time outstanding. In the event of the nonpayment of principal of any escrowed debentures when due, the escrow agents might, in their discretion (but need not unless requested in writing by holders of a majority of the principal amount of the protected debt securities) take any such action with respect to such default as any other holder or group of holders might be entitled to take. "Anything elsewhere in this agreement to the contrary notwithstanding, the Escrow Agents may * * * consent to the extension or renewal of the debentures of any issue held by the Escrow Agents (whether maturing by their terms or called for redemption) if at least 90% in principal amount of debentures of such

issue shall have been deposited under this agreement".

It is not disputed that on November 15, 1938 more than 90% of the 5½% investment certificates becoming due on November 15, 1938 had been deposited with the agents.

The agreement further provided: the depositary appointed by a majority of the escrow agents might be removed at any time; and upon the appointment of a successor, the depositary was authorized to turn over and deliver to such successor, upon the written direction of the escrow agents, all escrowed debentures, property and money, if any, held by it. "The Escrow Agents and the depositary shall be deemed to have accepted respectively the duties and obligations imposed upon them, respectively, by this agreement, only upon the terms and conditions herein contained." Among these were provisions that the depositary might employ counsel, should not be answerable for his default, neglect or misconduct if reasonable care had been exercised in his selection or intention; would not be responsible or liable for any error of judgment or mistake of law or fact, or for any unwise exercise of any discretion, duty or power imposed or conferred; "nor for anything whatever in connection herewith except * * * its own willful misconduct or gross negligence". The depositary should be fully protected in respect of any action under the agreement taken or suffered in good faith by "it in accordance with the opinion of such counsel", and in action upon or in accordance with "any request * * * order, notice, * * * certificate, * * * opinion, * * * or other instrument or power, believed by them * * * to be genuine". "The certificates, resolutions, opinions and other instruments provided for or permitted by any provisions of this agreement * * * may in all cases be * * * received as conclusive evidence of the accuracy of any statement or other matter therein contained pertaining to * * * its rights or duties hereunder, and shall be full warrant, authority and protection to them and each of them, acting on the faith thereof, for taking or omitting to take any such action or allowing it". "The depositary shall be fully protected in any action taken or required to be taken by it hereunder in accordance with the instructions of the Escrow Agents."

The indentures under which debentures were issued either by Ageco or Agecorp were substantially similar in terms. In none was any security conveyed or transferred to the trustee therein named. All of such debentures were absolutely unsecured by any collateral. They were, in fact, no more than a promissory note although they were at times called bonds. Substantially the only duties of the trustee therein designated included the certification of debentures as issued, their registration if required, and the nature of action which the trustee might or should take after default by the obligor or maker of the debenture in payment of the principal or interest, or in the performance of some other covenant or agreement on its part to be kept. No title to any property or to any debenture was vested in the so-called trustee; and it was not authorized to take any action with reference to the debentures except after a default. All of the indentures to which my attention has been called provide for the issuance and delivery of hundreds of millions of dollars of these promissory notes, without security, and upon a resolution of the Board of Directors or Executive Committee of the issuing company, the order of one of the specified officers and the opinion of counsel that the indebtedness to be represented is within the total amount of the indebtedness which the company may then by law be authorized to incur or create.

Each indenture contained the usual exculpatory clauses in favor of the trustee therein named, in terms almost identical with those contained in the escrow agreement and above referred to. The trustee was not even required to take notice of any default or be deemed to have notice thereof unless notified; or to take any action in respect of any default unless requested so to do. It incurred no liability for anything upon any document or paper believed by it to be genuine, and "shall be under no obligation to make any investigation as to any statement made in any certificate or other document" filed with it. It was not required to "see to the performance of any of the covenants or agreements on the part of the company".

It is also alleged in the complaint, and admitted by the bank only for the purposes of this motion, although denied in its answer, that for many years prior to November 15, 1938, Ageco and Agecorp and their subsidiaries had been controlled by Howard C. Hopson and another; that the bank had enjoyed a large and profitable business from

those sources, had loaned money to them, and on the date in question, held their notes. It further alleges that in 1932 a subsidiary of Ageco purchased a large block of stock of the bank, and shortly thereafter gave an option to one of Hopson's companies to purchase the same at cost; that said stock was dealt in from time to time by such subsidiaries and Hopson's companies, the option was finally exercised in part at a cost substantially less than the market price, that shortly thereafter an option was given to E. C. Gersten, then president of the bank, to purchase 4,000 shares, which option was exercised in January 1937, at a time when the market price was substantially higher than the amount paid by Gersten. It is also alleged that prior to November 15, 1938, Gersten had owned various amounts of different classes of Ageco stock, and at one time had been a director of one of its subsidiaries. On the date in question, it is also alleged that the bank was registrar of the stock of another corporation owned or controlled by Hopson. I do not see how the facts stated in this paragraph materially affect the questions to be decided, but they are mentioned because they are to some extent relied upon as furnishing part of the background against which the conduct of the bank is sought to be judged.

▇▇▇ It is obvious, I think, that no trust was created either by the escrow agreement or by any of the indentures. No property was conveyed to the trustee by any of the indentures; there was no res possessed or held for the benefit of another. None of the debentures stated that they were secured by anything. The purchasing public had no security other than the promise of the obligor to pay, and its ability to do that was contingent upon its earnings and upon such other property as it might own and which it had not pledged. The trustee, until a default occurred, had not much more than clerical duties to perform at the behest of the issuing company communicated in the form of a certified resolution with a request by one of its designated officers and an opinion of counsel selected by the issuing company. Hackner v. Morgan, 2 Cir., 130 F.2d 300, certiorari denied, Eastman v. Guaranty Trust Co., December 14, 1942, 317 U.S. 691, 63 S.Ct. 266. Under the escrow agreement, the only obligation created in the bank was that of safekeeping and ultimate delivery. It had only bare possession of the old debentures, was not

given the right and had no power in any way to deal with them. Kelly v. Illinois State Trust Co. 7 Cir., 215 F. 567–572, certiorari denied 235 U.S. 701, 35 S.Ct. 203, 59 L.Ed. 432.

▇ The escrow agreement and indentures were executed in New York, and the obligations thereunder were to be performed there. The duties of the bank as trustee, certainly, under ordinary circumstances, were fixed and determined by the provisions of the indentures, and it could not be held liable to a bondholder to perform a duty unless it had agreed to do so. Green v. Title Guarantee & Trust Co. 223 App.Div. 12–15, 227 N.Y.S. 252, affirmed without opinion 248 N.Y. 627, 162 N.E. 552; Benton v. Safe Deposit Bank, 255 N.Y. 260, 265, 174 N.E. 648; Hazzard v. Chase National Bank, 159 Misc. 57, 287 N.Y.S. 541, affirmed without opinion in 257 App. Div. 950, 14 N.Y.S.2d 147, and 282 N.Y. 652, 26 N.E.2d 801. The same principle has been applied to a contract between a bailor and bailee. Sagendorph v. First National Bank of Philmont, 218 App.Div. 285, 286, 218 N.Y.S. 191; Sturm v. Boker, 150 U.S. 312, 330, 14 S.Ct. 99, 37 L.Ed. 1093.

It is admitted by the plaintiff that no specific duty was expressly imposed upon the bank, either by the escrow agreement or any of the indentures, to present the certificates for payment on November 15, 1938. It is also clear that there is nothing in the language of these instruments which would warrant this court in writing into them an implied covenant imposing upon the bank the affirmative obligation to make such presentment; the bank was not an active covenanting party thereunder. Rhinelander v. Farmers' Loan & Trust Co. 172 N.Y. 519, 534, 65 N.E. 499. It is urged, however, under the Rhinelander case, Frishmuth v. Farmers' Loan & Trust Co., C.C., 95 F. 5, and other cases, that even though a covenant may not be implied from anything stated in the instrument mentioned, equity will, where it is obviously the intent of the parties, imply an obligation or duty to do something not expressly mentioned. I do not think those cases are controlling here. In the Frishmuth and Rhinelander cases, liability was imposed because the trustee under a corporate mortgage which conveyed a res, had certified and delivered bonds upon a certificate of the obligor which generally stated the purposes for

which the bonds were to be used instead of specifically showing the purposes to which the proceeds of the bonds were to be applied; and there the bonds were to be issued for the construction of a railroad and the acquisition of its right of way, in other words, for the purpose of acquiring and creating the very security protecting the bondholders, an entirely different situation from every point of view than here existing. In Doyle v. Chatham & Phenix National Bank, 253 N.Y. 369, 171 N.E. 574, 71 A.L.R. 1405, liability was imposed upon a similar corporate trustee for authenticating bonds upon the deposit with it of securities which did not comply with the terms of the mortgage, and the trustee thus transcended its powers and was guilty of making a misrepresentation of fact. In Patterson v. Guardian Trust Co. 144 App. Div. 863, 129 N.Y.S. 807, the trustee permitted the proceeds of bonds deposited with it to be applied other than to the payment of prior mortgages.

■ Assuming an implied obligation or duty, it is clear even from the cases mentioned, that it will not be the basis of liability unless the omitted act was clearly within the intent of the parties, does not conflict with any provision of the instrument under which the trustee so-called is acting, and is required in the application of equitable principles. Here, that the bank should present the debentures for payment, clearly was not within the intent of the parties. Under the escrow agreement, no title was vested in the bank, and under the very terms of the agreement, it was bound to do what it was requested by the escrow agents to do. Under the indentures, neither possession nor title was in the bank, and it had no control over any of the debentures after they were certified until default. That there was any implied obligation on the part of the bank to present the debentures seems to me to be contrary to the express terms of the escrow agreement. The bank did not have unrestricted possession thereof, only possession in accordance with the agreement. That agreement, plaintiffs admit, provided that the escrow agents should collect. It is not to be implied that someone else would. Where the terms of the agreement are clear, no obligation or duty in conflict with it will be implied. Green v. Title Guarantee & Trust Co., supra, 223 App.Div. at page 16, 227 N.Y.S. 252; Ben-

ton v. Safe Deposit Bank, supra, 255 N.Y. at page 266, 174 N.E. 648; Bell v. Title Trust & Guarantee Co. 292 Pa. 228, 140 A. 900-902, 57 A.L.R. 463; Byers v. Union Trust Co., 175 Pa. 318-326, 34 A. 629.

■ Assuming an implied duty here, such as may be said to exist between a trustee and cestui, I do not think it can include the alleged omission, from the indenture trustee standpoint, and in contravention of the express terms of the agreement, from the depositary standpoint. As trustee, the bank did not have possession of the debentures, or any control over them, or over any res or collateral to protect them. It could not present them for payment. As depositary, it had no right to take from its deposits securities which had been left with it for safekeeping and ultimate return to others. It had been instructed not to present by owners of the debentures. It had no duty to collect, require or receive payment; that was otherwise provided for specifically. As depositary or trustee it could not anticipate a default or take any precautions to prevent it. If warned, as it was here, of a possibility of default, what should it have done to prevent it? I cannot see that it could do anything. Presentation, if it were made, under the circumstances shown here, would have insured a default which was impending and foretold. Under the circumstances, if it could not prevent that, what harm would ensue to the protected securities that was not already a certainty. Plaintiff says some or a substantial part of the debentures would have been collected. There are no facts to justify that conclusion, and none even are pleaded. The facts shown are to the opposite. Funds were to be provided sufficient only to pay debentures outstanding in the hands of the public. Those moneys obviously deposited for a particular purpose were impressed with a trust in favor of those particular debentures. It has been so held in the reorganization proceedings involving Ageco. See opinion of Leibell, D.J. in Matter of Ageco and Agecorp[1] filed November 17, 1942. Matter of Arcadia Trust Co., 240 App.Div. 166, 168, 268 N.Y.S. 759; Shawmut Corp. v. Bobrick Sales Corp. 260 N.Y. 499, 184 N.E. 68; Genesee Wesleyan Seminary v. United States F. & G. Co., 247 N.Y. 52-55, 159 N.E. 720, 56 A.L.R. 964; People v. City Bank of Rochester, 96 N.Y. 32-36.

---

[1] No opinion for publication.

It is clear, I think, that as trustee under the indentures, it could not present the indentures for payment and there was no obligation to do so. As depositary, on the due date it received explicit instructions from the escrow agents, owners of the debentures, not to make presentment. It would seem it had the right to follow those instructions. Kelly v. Illinois State Trust Co., 7 Cir., 215 F. 567–573, certiorari denied 235 U.S. 701, 35 S.Ct. 203, 59 L.Ed. 432. It had under the very terms of that agreement the right to rely upon that order or request and was fully protected in so relying, to accept as conclusive evidence the accuracy of the statements then and therein made, it was not required to investigate its accuracy, and it was relieved of all liability for any such reliance or belief and from any error of judgment, mistake of law or fact or for any unwise exercise of discretion, and, in fact, for everything except willful misconduct or gross negligence. It is well settled, I believe, that if this bank did not transcend or step outside of its powers under the written instruments mentioned, the exculpatory provisions contained in the escrow agreement and in the indentures are valid and full protection for its failure, if any there was, to make presentment of the debentures on November 15, 1938. Ansbacher v. New York Trust Co., 280 N.Y. 79, 19 N.E.2d 790; Benton v. Safe Deposit Co., 255 N.Y. 260–267, 174 N.E. 648; Greene v. Continental Bank & Trust Co. 267 N.Y. 519, 196 N.E. 559; Green v. Title Guarantee & Trust Co., 223 App.Div. 12, 227 N.Y.S. 252, affirmed 248 N.Y. 627, 162 N.E. 552; Hazzard v. Chase National Bank, 159 Misc. 57, 287 N.Y.S. 541, affirmed in 257 App.Div. 950, 14 N.Y. S.2d 147, and 282 N.Y. 652, 26 N.E.2d 801; Hunsberger v. Guaranty Trust Co., 164 App.Div. 740, 150 N.Y.S. 190, affirmed 218 N.Y. 742, 113 N.E. 1058.

Here the bank did nothing beyond its authority. It is charged with doing something not expressly within its authority. There was no command that it present; there was a command that it should not, one issued ostensibly within the written authority of the escrow agents. If it was bound equitably to do something which it was told not to do, surely there can be no liability unless there were loss to the cestui, which I think I have shown has not been proven here, if then. But nothing having been done contrary to any express provision of any writing, what is there left, assuming that the instructions of the escrow agents were not valid, but a mistake of fact or law, or the erroneous exercise of judgment, for which it is exculpated, and which, in equity, would not ordinarily be the basis for the judgment here sought? What more should this bank have been by equity required to do under the circumstances, knowing as it did that whatever it might do by way of presentment would be abortive? And, finally, what this defendant has failed to do has not, so far as the facts show, jeopardized the security of plaintiffs or of those they claim to represent. They are no worse off than if the bonds had been presented for payment. They would not have been paid. Under no circumstances can the bank be charged with bad faith or gross negligence for anything shown here. Browning v. Fidelity Trust Co., 3 Cir., 250 F. 321, certiorari denied 248 U.S. 564, 39 S.Ct. 9, 63 L.Ed. 423. For the same reasons, no recovery can be had against the bank for the return of the moneys paid to it as trustee.

Inasmuch as I think this is decisive of the present motion, a discussion of the other points would merely extend this opinion, already too long.

The bank's motion for summary judgment is, therefore, granted.