## Montague v. The Farmers National Bank of Watsontown, Pa., Trustee, etc.

*Sidney J. Apfelbaum, Clark Wolfe Kalp* and *John Zeller,* for plaintiff.

*Calvin Friedburg* and *Samuel Gubin,* for defendant.

TROUTMAN, J., March 21, 1955.—Plaintiff, Harry M. Montague, has brought an action of assumpsit against defendant bank, the Farmers National Bank of Watsontown, Pa., both as trustee under a mortgage of Montgomery-Clinton School Association and in its private corporate capacity. Defendants filed preliminary objections to plaintiff's complaint in the nature of a demurrer. These preliminary objections are now before this court for disposition.

By its demurrer to the complaint, defendant admits for present purposes the truth of every well-pleaded, material, relevant fact, and every inference fairly deducible from the facts pleaded: Byers v. Ward, 368 Pa. 416, 420.

The complaint discloses that plaintiff is the owner and holder of a first mortgage bond of the Montgom-

ery-Clinton School Association, numbered M-127, dated January 1, 1929, due January 1, 1969, with interest payable at the rate of five and one-half percent at the Farmers National Bank of Watsontown, Pa., said bond purporting to be secured by a certain mortgage, dated April 10, 1929, given by Montgomery-Clinton School Association to defendant bank as trustee to secure a bond issue of the association. Plaintiff became owner of the bond as a legatee under the will of a former owner, J. Raymond Laird, who died in 1951, decedent having purchased the bond on May 17, 1935.

The mortgage given by Montgomery-Clinton School Association to defendant bank as trustee to secure the bond issue of the association contains a description of the bonds and includes 135 bonds of the denomination of $1,000, numbered from M-1 to M-135.

Attached to the bond are semi-annual interest coupons payable at defendant bank. These coupons were presented for payment to the bank and paid when due each half year until July 1, 1944, when payment was refused on the ground that the bond was not a genuine and subsisting obligation of the Montgomery-Clinton Association. Since that time plaintiff and his predecessor in title have presented the coupons to the bank as they became due, but the bank has continued to refuse payment.

Plaintiff does not know whether the bond is valid, but he has been notified in writing by the association that it does not recognize the bond as a valid obligation of the association and that it will not be paid. A copy of this notice is attached to the complaint and marked exhibit "C" and purports to be a copy of a resolution adopted by the association instructing the trustee bank not to pay interest on any $1,000 bond bearing a number in excess of M-115 and is addressed to all known holders of the bonds of the Montgomery-Clinton School Association.

After the mortgage was executed and recorded, the association decided to sell and negotiate only those $1,000 bonds numbered from M-1 to M-115, inclusive, and authorized its secretary-treasurer, L. A. Henderson, to sell and negotiate these bonds. Henderson, however, in violation of his authority, sold and negotiated $1,000 bonds numbered M-116 to M-135, inclusive, to various persons.

The bond in suit was authenticated by defendant bank by the following certificate of authentication:

"Trustee Certificate

"This is one of the bonds described in the within mentioned mortgage.

Farmers National Bank
Watsontown, Pennsylvania

By: s/ E. D. Deitrick, Trust Officer"

The signatures appearing on the bond and on the certificate of authentication were genuine, and E. D. Deitrick was authorized by the bank to sign the certificate of authentication. When J. Raymond Laird, plaintiff's predecessor in title, purchased the bond in suit, he relied upon defendant bank's certificate of authentication as a warranty that the bond was genuine and in proper form and that it did not constitute an overissue.

Plaintiff avers that the facts set forth in his complaint constitute a breach of the warranties contained in defendants' certificate of authentication and demands judgment against defendants or either of them in the sum of $1,000, with interest.

Defendants have assigned six reasons in support of their preliminary objection in the nature of a demurrer. At the argument, defendants abandoned their reasons lettered "c", "d" and "f".

The first reason assigned in support of their demurrer is that the sole basis of the liability sought to be imposed on defendant bank is its certificate of

authentication appearing on the bond in suit, which plaintiff contends constituted a warranty of which a breach was committed by defendant, and since the complaint discloses that the facts warranted by the certificate of authentication were true, a breach of warranty is excluded.

The theory on which plaintiff seeks to impose liability on defendant bank is that there was a breach of the warranties contained in defendants' certificate of authentication attached to the bond. The only language appearing in the certificate is "This is one of the bonds described in the within mentioned mortgage." The complaint leaves no room for doubt that the bond held by plaintiff was one of the bonds described in and secured by the mortgage. It is not alleged to be a counterfeit or spurious bond. Its number, M-127, identifies it as one of the 135 bonds of the denomination of $1,000 authorized by the mortgage. Plaintiff expressly avers (paragraph 14) that the signatures appearing on the bond of P. F. Hartranft and L. A. Henderson, who executed the bond on behalf of the association as its president and secretary-treasurer, respectively, and the signature of E. D. Deitrick, who executed the certificate of authentication on behalf of the trustee bank as its trust officer are all genuine.

A person placing his signature upon a bond as authenticating trustee, warrants to a purchaser for value, without notice of the particular defect, that the bond is genuine and in proper form and that the bond is within the amount authorized for issue by the mortgagor. This statement paraphrases the present statutory law of Pennsylvania as set forth in the Uniform Commercial Code of April 6, 1953, P. L. 3, sec. 8-208, (Investment Securities) 12A PS §8-208. While the Commercial Code did not go into effect until July 1, 1954, this particular section is a restatement of

the prevailing case law as to the effect of the signature of an authenticating trustee. See Uniform Commercial Code Comment and Pennsylvania Bar Association Notes, title 12A PS §8-208, pages 268-69.

Undoubtedly, the bond in question in this case is in proper form in that it is regular on its face with regard to all formal matters. A comparison of the mortgage and the bond upon which suit has been brought shows no formal defects in respect to plaintiff's bond. Furthermore, the complaint raises no question as to the genuineness of the bond inasmuch as there is no allegation of forgery or counterfeiting and, as a matter of fact, it is admitted that the signatures thereon are genuine.

In paragraph 11 of the complaint, plaintiff avers that he has no personal knowledge as to whether the bond which he owns and holds is spurious and not a genuine and subsisting obligation of the Montgomery-Clinton School Association. He did receive notice from the association that the bond is not recognized by the association as a legal and binding obligation and that the bond will not be paid.

In the twelfth paragraph of the complaint, plaintiff alleges that he is informed, and believes, and therefore avers that after the mortgage was executed and recorded, the association determined to issue, or negotiate and sell of the bonds described in the mortgage only those bonds of $1,000 denomination bearing numbers from M-1 to M-115, inclusive, and authorized its secretary-treasurer, L. A. Henderson, to sell and negotiate on behalf of the association bonds numbered from M-1 to M-115, inclusive, and that L. A. Henderson, in violation of his authority, sold and negotiated the $1,000 bonds numbered M-116 to M-135, inclusive, to various persons.

A logical construction of the averments contained in paragraphs 11 and 12 of plaintiff's complaint is

that the Montgomery-Clinton School Association was refusing to pay the bond held by plaintiff, which is no. M-127, because it was included in the group of bonds sold by L. A. Henderson in violation of his authority. There is no averment in the complaint that this bond was purchased of defendant bank or trustee. The question then arises as to whether the authenticating trustee breached the warranty to plaintiff as a purchaser for value that the security was within the amount specified in the authorization received by the trustee from the issuer.

Plaintiff contends that since the association only authorized the sale of bonds M-1 to M-115, inclusive, the authenticating trustee in fact certified to an over-issue of bonds when it affixed its certification to the bond held by the plaintiff, being numbered M-127.

The mortgage provides for the issuance of bonds of different denominations including bonds in the denomination of $1,000 numbered consecutively from M-1 to M-135. It explicitly requires that upon the execution and recording of the mortgage, all the bonds to be issued thereunder are to be executed and delivered to the trustee bank and the trustee shall thereupon certify and return to the association all of the said bonds, with all the coupons thereto belonging. Having certified and returned to the assocation the entire bond issue, the trustee's duties in respect to the authentication of the bonds terminated. The mortgage indenture imposed no further duties upon the trustee in this regard. The association was thereafter exclusively concerned with the sale and negotiation of the authenticated bonds returned to it by the trustee.

The alleged defect in plaintiff's bond, which prompted plaintiff to institute the present proceeding, developed from events which occurred after the trustee had fully performed its duties respecting authentication of the bond issue. It was the association

who decided to sell only those bonds of $1,000 denomination bearing numbers from M-1 to M-115.

Plaintiff does not aver in his complaint that the trustee knew or had reason to know of the restriction on the number of bonds to be sold or the unauthorized sale of the bonds numbered from M-116 to M-135. The trustee was not obliged, under the terms of the mortgage indenture, to supervise the sale or negotiation of the bonds. Its duties were fully performed when it returned all of the bonds to the association with its authentication certificate attached.

The warranty contained in the trustee's certificate of authentication is limited in scope. Liability can be imposed upon the trustee on the basis of its certificate of authentication only if the bond were not in fact genuine but was counterfeit, or if the bond certified as one of the bonds described in the mortgage was not in fact such a bond but constituted an overissue. It does not embrace a defect in the bond entirely unrelated to its execution or authentication, but caused by wrongful conduct in negotiating the bond after the trustee had performed its authentication, and concerning which the trustee had no control or knowledge. The association was the issuer of the bond and the only duty which was imposed upon defendant trustee was to certify that the bond was one of the bonds described in the mortgage. Since the number of plaintiff's bond, namely M-127, was within the number of bonds of the denomination of $1,000 provided in the mortgage, the certification of this bond did not result in an overissue. The fact that the association placed a restriction on the number of bonds to be sold can in no way affect the authentication of the trustee, inasmuch as the trustee had no duties to perform in relation to the negotiation and sale of the bonds. An overissue only occurs in respect to an authentication by a trustee where the trustee certifies bonds

in excess of the amount authorized to be issued. The trustee cannot be held liable for the unlawful conduct of Henderson, who was an officer of the association.

The trustee by its authentication warranted that the security was genuine and in proper form, that its participation in the issue of the security was within its capacity and within the scope of the authorization received by him from the issuer and that the security was within the amount specified in such authorization. In this case, the mortgage contained the authorization of the authenticating trustee. The trustee's certificate of authentication did not warrant that the security was valid in other respects. It is not a guarantee of the validity of the bond: Bell v. Title Trust and Guarantee Company, 292 Pa. 228. Plaintiff's claim is based upon the proposition that there was a breach of warranty contained in the certificate of authentication. It is not a suit on the bond itself. Since the bond is genuine and in proper form and is within the amount specified in the mortgage, and since there is no allegation that the certification was not within the scope of the authorization received by the trustee, there is no breach of warranty alleged in the complaint and, therefore, defendants' first and second reasons in support of their demurrer are valid and are sufficient to sustain a demurrer to the complaint.

Inasmuch as the court has sustained the demurrer on the first two reasons assigned by defendants in support thereof, it is unnecessary to discuss the third reason assigned by them, 1(e), which is to the effect that since the complaint does not aver that the bond in suit is invalid and unenforcible, the complaint fails to afford any basis for a determination that plaintiff sustained any legal damage by reason of defendants' alleged breach of warranty. Suffice it to say that there is no allegation that plaintiff had ever attempted to enforce his rights under the bond against the associa-

tion. Plaintiff's suit is based upon a breach of warranty in the authentication and we have already held that the complaint does not aver a breach of warranty.

It is well settled that an opportunity will be given to amend the pleading, if it appears that a better case can be stated: Tide Water Associated Oil Company v. Kay, 168 Pa. Superior Ct. 263. The question is whether the defects in the complaint, to which defendants have made valid objections, may be cured by amendment. The objections which we have sustained refer to a complete lack of cause of action and not to the manner of the pleading. The court cannot conceive in what respects the present complaint may be amended to make it sufficient in law without alleging facts inconsistent with those contained in the present complaint. Defendants' demurrer must be sustained.

### Order

And now, to wit, March 21, 1955, defendants' preliminary objection in the nature of a demurrer is hereby sustained and judgment is hereby entered in favor of defendants.